724 So.2d 948 (1998)
Eunice S. FLECHAS, Appellant,
v.
Miguel Martin FLECHAS, III, Appellee.
No. 97-CA-01454 COA
Court of Appeals of Mississippi.
December 18, 1998.
*950 Gary L. Roberts, Attorney for Appellant.
Walter W. Teel, Attorney for Appellee.
BEFORE BRIDGES, C.J., PAYNE AND SOUTHWICK, JJ.
PAYNE, J., for the Court:

PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. This appeal is before the Court challenging the judgment of the Chancery Court of Jackson County, the Honorable Pat H. Watts, Jr., presiding. The appellant, Eunice Flechas, raises three issues for our review: whether the trial court erred when it adjudicated that there were no assets acquired by either party during the marriage and there was therefore no marital property to divide, whether the trial court erred by awarding Eunice only $18,000 lump sum alimony, and whether the trial court erred in awarding Eunice rehabilitative alimony of $750 for only one year. Based upon our review of the record and the briefs submitted by both parties and the failure of the chancellor to provide adequate findings of fact and conclusions of law supporting his decision, we reverse and remand as to all issues as set forth below.

FACTS
¶ 2. Eunice, a teacher in the Georgia public school system who abandoned her job and sold her home to move to Mississippi, and Miguel, a Mississippi businessman, were married on June 15, 1991 and separated on September 15, 1996. The union produced no children. Eunice lived in Georgia and sold her home to move to Mississippi to marry Miguel. On November 6, 1996, Eunice filed her complaint for divorce on the grounds of habitual cruel and inhuman treatment, or alternatively, because of irreconcilable differences. In her complaint, Eunice moved for an equitable division of marital assets, for lump sum and permanent periodic alimony, for Miguel to maintain a life insurance policy on his life with Eunice as the irrevocable beneficiary, for Miguel to maintain health and hospitalization insurance on Eunice, and for reasonable attorney's fees.
¶ 3. Miguel filed his answer and counterclaim on November 26, 1996, denying Eunice's claims of entitled relief but seeking a dissolution of the marital bonds on the grounds of irreconcilable differences. In addition, Miguel moved for attorney's fees from Eunice. Eunice answered Miguel's counterclaim on December 4, 1996, agreeing to the grant of the divorce on the grounds of irreconcilable differences conditioned on the parties agreeing to the terms of a property settlement or a consent of divorce.
¶ 4. On January 14, 1997, the chancellor entered a temporary order giving Miguel control of the marital home, ordering Miguel to pay Eunice $1500 per month, and requiring Miguel to maintain health and automobile insurance on Eunice. On October 10, 1997, the parties filed with the trial court a joint consent to be divorced on the ground of irreconcilable differences and to allow the chancellor to decide all issues in dispute between them, and on the same day a trial was conducted to resolve these issues. On October 16, 1997, the chancellor issued his order awarding Eunice $750 periodic rehabilitative alimony for 1 year, lump sum alimony of $18,000 divided into twelve monthly payments of $1500 each, and Miguel was ordered to maintain health insurance on Eunice until such time as she acquired the same through her employment or for one year, whichever occurred first. The chancellor found that there was no property accumulated during the marriage; thus, there was no equitable distribution of marital assets ordered. In addition, the chancellor taxed equally court costs and found that Eunice and Miguel were responsible for their own attorney's fees.
¶ 5. From the chancellor's order flowed this appeal.

STANDARD OF REVIEW
¶ 6. The standard of review employed by this Court in domestic relations cases is *951 abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994); Crow v. Crow, 622 So.2d 1226, 1228 (Miss.1993); Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991).
ANALYSIS
I. WHETHER THE TRIAL COURT ERRED WHEN IT ADJUDICATED THAT THERE WERE NO ASSETS ACQUIRED BY THE PARTIES DURING THE MARRIAGE AND THERE WAS THEREFORE NO MARITAL PROPERTY TO DIVIDE
¶ 7. Eunice's first assignment of error is that the trial court erred in determining that there was no marital property acquired during the marriage and thus no basis for an equitable distribution of the same. Eunice maintains that two assets were acquired by the parties during the marriage and should have been subject to equitable distribution: a parcel of income-generating rental property and approximately 1.5 million dollars in income generated during the marriage. Miguel counters this assertion claiming that the property was acquired with his own funds accumulated before the marriage, and the income generated during the marriage was done with assets acquired before the marriage and thus should not be considered marital income. We have no guidance from the chancellor below as to why he found that the real estate purchased during the marriage and the income produced during the marriage did not constitute marital assets. Accordingly, we reverse and remand for specific finding of fact and conclusions of law based on the following discussion of the present law regarding the equitable distribution of the assets.
¶ 8. For the purpose of divorce, the Mississippi Supreme Court has defined marital property "as being any and all property acquired or accumulated during the marriage." Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Such marital assets acquired during the course of the marriage may be equitably divided "unless it can be shown by proof that ... [the] assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." Id. at 914. In arriving at an equitable distribution of marital property, the supreme court has suggested that chancellors should consider the following guidelines set forth in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994):
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination *952 of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
In this case, the testimony established that Eunice quit her job as a teacher in the Georgia public school system where she earned over $33,000 annually and sold her home in Augusta, Georgia to move to Pascagoula to marry Miguel and be his helpmate. Miguel gave Eunice an allowance of $2000 per month to run the marital home which included groceries, utilities, telephone expenses, and clothing for all members of the household.[1]
¶ 9. According to Miguel's 1991 financial statement, the year he and Eunice were married, he brought into the marriage total assets of $4,417,317. At the time of the divorce, Miguel's assets totaled $6,208,500. Thus, during the duration of the marriage, Miguel's assets increased by $1,791,183. Miguel claims that this increase was not contributed to by Eunice, that he was totally responsible for the increase, and that all the money earned during the marriage was his because "it was made from what I spent my life doing." With regard to the rental property acquired during the marriage, Miguel testified that the property was purchased with his money and that Eunice contributed nothing to its purchase. Although the couple had limited discussions, according to Miguel, regarding their financial lives, Miguel was under the impression that both intended to maintain separate finances. Miguel testified that he believes that Eunice married him for the sole purpose of climbing the social ladder and inheriting his substantial wealth on his death. Since he is not deceased, he testified that he believes she wanted to get it through the divorce. He contends the income earned during the marriage was from his previously established businesses, and the marriage was of a short duration. Thus, he argues Eunice should not in equity benefit from his work to which she made no contribution.
¶ 10. Eunice tells a much different story. She also brought substantial assets into the marriage of approximately $500,000, including the proceeds of the sale of her home in Georgia, retirement funds, as well a substantial inheritance from her mother's estate. Eunice first moved to Mississippi in 1989 with the expectation of marrying Miguel. However, it soon became apparent that Miguel did not intend to marry Eunice at that time. Thus, Eunice moved back to Georgia and resumed teaching. However, shortly after her move back, Miguel informed her that he did want to marry her. After the completion of her contract, she again moved back to Mississippi to marry Miguel, which occurred shortly after her return. Eunice did not work outside the home for the first five years of the marriage because of household and family obligations; however, the record does reflect that Eunice did work extensively. Eunice testified that the home she moved in after her marriage to Miguel was in much disarray. As a result. Eunice contributed much time and labor to refurbishing the home the couple shared, including extensive painting and other refurbishing activities. Also, Eunice served as a surrogate mother for Miguel's son, Marshall. Eunice had no control over Marshall and voiced concerns to Miguel about this problem. Eunice feared for her safety at times as Marshall matured and began having problems with the law. In addition, Eunice cooked for the family; however, it was unusual for Miguel to eat with the family, and sometimes Marshall would not eat either. After the first year of marriage, Eunice's daughter, Courtney, entered the University of Southern Mississippi and spent the majority of her time in Hattiesburg and only visited her mother and stepfather occasionally.
¶ 11. While it is certain that the majority of the assets generated during the marriage were the direct result of Miguel's business interests, the chancellor manifestly erred in concluding that Eunice made no contribution in this regard. "One type of contribution, such as financial, has equivalent value to another, such as domestic." Maslowski v. Maslowski, 655 So.2d 18, 23 *953 (Miss.1995) (citing Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994)). "Although contributions of domestic services are not made directly to a retirement fund, they are nonetheless valid material contributions which indirectly contribute to any number of marital assets, thereby making such assets jointly acquired. And, it must be remembered, the goal of the chancellor in a divorce case is to do equity." Tillman v. Tillman, 716 So.2d 1090, 1093 (Miss.1998) (citing Ferguson, 639 So.2d at 934). Further, Ferguson provides for a consideration of the contribution to the maintenance to the marital home and the quantity and quality of time spent in this regard. Also, "[i]nstead of looking to the bare title of a marital asset, this Court, as should the trial courts, will continue to consider all of the facts and circumstances surrounding the accumulation of the marital assets, including noneconomic contributions and factors, when deciding how the marital property should be divided under our system of equitable distribution." Carnathan v. Carnathan, 1998 WL 634942, *5 (Miss.1998) (emphasis added).
¶ 12. Whether the chancellor considered Eunice's non-economic contributions is unclear from the record, as the chancellor failed to make specific findings of fact and conclusions of law. The failure of the chancellor to make requisite findings of fact and conclusions of law may, of itself, be reversible error. Sandlin, 699 So.2d at 1204. The chancellor must make specific findings of fact and conclusions of law with regard to Eunice's non-economic contributions to the marital estate. The chancellor manifestly erred in not doing so, and we reverse and remand for specific findings of fact and conclusions of law by the lower court in this regard.

II. WHETHER THE TRIAL COURT ERRED BY AWARDING EUNICE ONLY $18,000 LUMP SUM ALIMONY
¶ 13. Eunice's second assignment of error alleges that the trial court erred in awarding her only $18,000 in lump sum alimony, payable over 12 months at $1500 per month. Eunice points to the fact that she sold her home in Georgia, quit her well-paying teaching job in Georgia, and the fact that her separate estate is approximately one-twelfth the size of Miguel's estate. Miguel counters with his position that since Eunice contributed nothing to the building of his estate, she then is entitled to nothing from his estate.
¶ 14. Mississippi precedent establishes that the chancellor's award of alimony "is a matter primarily within the discretion of the chancery court because of its peculiar opportunity to sense the equities of the situation before it." Tilley v. Tilley, 610 So.2d 348, 351 (Miss.1992). Moreover, in Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss. 1988) and subsequent cases, the Mississippi Supreme Court has set forth four factors to be considered in determining whether lump sum alimony is appropriate in a particular case:
1. Substantial contribution to accumulation of total wealth of the payor, either by quitting a job to become a housewife or assisting in spouse's business;
2. A long marriage;
3. Where the recipient spouse has no separate income or the separate income is meager by comparison;
4. Without the lump sum awarded, the receiving spouse would lack any financial security.
See also Tilley, 610 So.2d at 351. Moreover, "the single most important factor is the disparity of the separate estates." Cheatham, 537 So.2d at 438.
¶ 15. Here, there is unarguably an enormous disparity in the two estates in this case. Eunice did quit her job and sold her home in Georgia and moved to Mississippi to become a housewife, more or less. The marriage lasted for six years, which is a significant amount of time. It is obvious that even if Eunice regained her former job with the $35,000 annual salary, that would be meager in comparison to Miguel's annual salary. Thus, it appears that the chancellor failed to adequately assess the non-economic contributions of Eunice to the marital estate as well as her economic sacrifices made to be with Miguel. However, the chancellor gives us no guidance as to how he arrived at the $18,000 figure. Again, the chancellor failed to provide us with how he arrived at his award of the lump sum alimony. Consequently, we *954 reverse and remand for specific findings of fact and conclusions of law with regard to the award of lump sum alimony based on the Cheatham factors.

III. WHETHER THE TRIAL COURT ERRED IN AWARDING EUNICE REHABILITATIVE ALIMONY OF $750 FOR ONLY ONE YEAR
¶ 16. Eunice's third and final assignment of error surrounds the chancellor's award of one year of periodic rehabilitative alimony at $750 per month. Rehabilitative alimony is intended to allow the party in a divorce case with the least available means a fresh start, not as an equalizer of assets held by each party. Carnathan v. Carnathan, 1998 WL 634942 at *4, (Miss.1998); Hubbard v. Hubbard, 656 So.2d 124, 130 (Miss.1995).
¶ 17. The Mississippi Supreme Court has set forth factors for chancellors to consider in arriving at alimony awards including the health and earning capacity of both the husband and the wife, the entire sources of income of both parties, the reasonable needs of the wife and children, the necessary living expenses of the husband, the estimated amount of income taxes that the husband and wife must pay on their individual incomes, the fact that one party has free use of the home, furnishings and automobile(s), and such other facts and circumstances bearing on the subject that might be shown by the evidence. Hemsley v. Hemsley, 639 So.2d 909, 912-13 (Miss.1994).
¶ 18. In this case, Eunice, based on the lifestyle to which she was accustomed from the marriage, operated the marital home on $2000 per month for the duration of the marriage. The costs of moving back to Georgia, providing new housing, re-establishing her life there, and obtaining a fresh start would seemingly take at least as much as was required to operate the marital home she shared with Miguel. However, the chancellor, once again, failed to articulate the legal basis for his decision. Thus, it is difficult to ascertain on what basis the award was granted. Consequently, we reverse and remand in this regard for specific findings of fact and conclusions of law regarding the time and amount of rehabilitative alimony due to Eunice based on the Hemsley factors.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLEE.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND SOUTHWICK, JJ., CONCUR.
NOTES
[1] In addition to Miguel and Eunice, Eunice's daughter stayed in the home for one year of the marriage and Miguel's two sons, to both of whom Eunice served as a surrogate mother, lived there as well.