[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 297 
 PROCEDURAL HISTORY
¶ 1. Miguel "Mike" Flechas and Eunice Flechas were married in June 1991 and were granted a divorce in October 1997 due to irreconcilable differences. In the judgment of divorce, the chancellor ruled that no assets were acquired by either party during the marriage raising no need for equitable distribution. The chancellor also awarded Eunice $18,000 in lump sum alimony and $750 per month for one year in rehabilitative alimony. Aggrieved of the chancellor's decision, Eunice appealed to this Court. In Flechas v. Flechas, 724 So.2d 948 (Miss.Ct.App. 1998), we reversed and remanded this matter to the chancellor with instructions that he provide specific findings of fact and conclusions of law. We directed the chancellor to give specific justification for his decision not to award any equitable distribution particularly as concerning Eunice's non-economic contributions to the accumulation of marital assets, and also to explain his method of calculating the amount of lump sum alimony and rehabilitative alimony awarded to Eunice. Flechas, 724 So.2d at (¶¶ 12, 15)
¶ 2. On remand, the chancellor entered findings, altering his previous ruling to say that Eunice had contributed an "indirect economic contribution" to the "accumulation *Page 298 
of the marital assets of the parties in the sum of $36,000," but did not make any distribution of marital assets, finding "that the Wife has no interest in the real or personal property of the Husband acquired as to her indirect economic contribution to the same, this being the agreement of the parties, at the time of the marriage, which is supported by the manner in which the parties lived during the marriage." The chancellor found that due to the substantial disparity in the parties' estates, Eunice was entitled to $36,000 in lump sum alimony, which was twice the previous award. With regard to periodic alimony, the chancellor also increased the award from $750 to $2,000 per month for one year. Still aggrieved of the chancellor's judgment after remand, Eunice again has appealed to this Court.
¶ 3. We again reverse and remand, finding that the court has failed to properly consider marital assets. We also reverse and remand on the issue of lump sum alimony.
 FACTS
¶ 4. Both Mike and Eunice were sixty years old at the time of their divorce, which occurred after six years of marriage. Prior to the marriage, Eunice had been a teacher in Georgia earning $33,000 per year, and upon Mike's proposal Eunice resigned from her job, sold her home and moved to Mississippi. Eunice did not work outside the home once she was married, nor did she renew her teaching certificate in Georgia or become certified to teach in Mississippi. As a homemaker, Eunice refurbished Mike's home, kept house, cooked meals and helped care for Mike's children. On a monthly budget of $2,000,[1] which Mike deposited in a joint bank account each month for Eunice to access, Eunice paid the family bills and purchased necessities such as food and clothing for all members of the household, which at times included her daughter and two of Mike's sons. Eunice's net worth at the time of the divorce was approximately $500,000 which included proceeds from the sale of her Georgia home and an inheritance from her mother.
¶ 5. Mike is the sole owner of M. M. Flechas Shipyard Company and also has an interest in F F Towing Company, Lynn's Machine Works and Self Serve Marine, Inc., amassing substantial assets throughout his career which totaled $6.4 million at the time of the divorce. His monthly income was nearly $17,000 per month. Eunice claims that she is entitled to an equitable share of marital assets and a more fair lump sum alimony award. We review the chancellor's findings and find that the chancellor erred in failing to consider and address pertinent facts and factors as described herein. Accordingly, as explained with this opinion, we reverse and remand on the question of equitable distribution and reverse and remand on the matter of lump sum alimony. No issue is raised as to the award of periodic alimony, and that will be affirmed.
 ISSUES PRESENTED
¶ 6. With this appeal, Eunice makes the following assignments of error:
 I. THE TRIAL COURT WAS MANIFESTLY IN ERROR BY REFUSING TO AWARD EUNICE ANY OF THE ASSETS ACQUIRED DURING THE MARRIAGE.
 II. THE TRIAL COURT WAS MANIFESTLY IN ERROR IN AWARDING *Page 299 ONLY $36,000 IN LUMP SUM ALIMONY.
 STANDARD OF REVIEW
¶ 7. Out standard of review in domestic relations cases is clear:
 This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. In other words, on appeal this Court is required to respect the findings of fact by the chancellor supported by credible evidence and not manifestly wrong.
Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss. 1997) (citations omitted). Nonetheless, if manifest error is present or a legal standard is misapplied, this Court will not hesitate to reverse. Tilley v.Tilley, 610 So.2d 348, 351 (Miss. 1992)
 DISCUSSION OF THE ISSUES I. THE TRIAL COURT WAS MANIFESTLY IN ERROR BY REFUSING TO AWARD EUNICE ANY OF THE ASSETS ACQUIRED DURING THE MARRIAGE.
¶ 8. In matters of equitable distribution of marital assets, the first determination is which assets are marital assets versus non-martial assets. Burnham-Steptoe v. Steptoe, 755 So.2d 1225 (¶ 25) (Miss.Ct.App. 1999). Assets acquired during the course of marriage are marital assets and subject to equitable distribution unless it can be proven that such assets belonged to one of the separate estates prior to marriage. Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss. 1994). As stated in Hemsley:
 We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value.
Id. at 915.
¶ 9. Before we specifically address the issue of classification of certain assets as marital or non-marital, we address Mike and Eunice's alleged oral agreement, upon which the chancellor based his decision. As described herein, we disagree with the chancellor's reliance on, indeed his enforcement of, a nebulous oral agreement to the supposed effect that property accumulated during marriage would not become marital property. We find that the understanding does not comply with the requirements for enforceable prenuptial agreements.
¶ 10. This agreement was central to two parts of the chancellor's decree. First, the chancellor found that property accumulated during the marriage was not marital property and did not need to be equitably divided. Secondly, the court determined that Eunice's "indirect contribution . . . to the accumulation of the marital assets [was] the sum of $36,000.00." The court made this determination because our 1998 opinion remanding the case required this finding of fact. Flechas v.Flechas, 724 So.2d at (¶ 12). The chancellor found that even though Eunice had made this indirect contribution, the oral agreement prevented her from sharing in any way in accumulated assets. Thus, she did not receive the $36,000.
¶ 11. What is initially confusing is the coincidence that the judgment contained a different $36,000 figure. That separate amount was awarded as lump sum alimony. *Page 300 
¶ 12. What controlled the outcome was the existence of an oral agreement between the parties. Whether there was an explicit agreement or just an understanding is unclear. Mike said that the conversation occurred before the marriage. This is the description given by the chancellor:
 In reference to an agreement or understanding between the parties concerning the division of assets at the conclusion of the marriage, the Wife testified that, at the time of the marriage, it was her intention to keep her assets and investments separate from the Husband, so that she could give them to her children.
 She further testified that the Husband intended to keep his assets and investments separate from the Wife so that he could leave those assets to his children.
The chancellor then found that the parties had largely kept their assets uncommingled during the marriage, the exceptions being two small joint banking accounts. The entire weight of the chancellor's decision to ignore marital property, i.e., property accumulated during the marriage and not inherited or otherwise separately acquired, must be supported by the strength of this oral agreement.
¶ 13. One kind of agreement that can bear the weight of the chancellor's conclusions would be a written prenuptial agreement. An agreement in consideration of marriage must be in writing. Miss. Code Ann. § 15-3-1 (b) (Rev. 1995). The record is silent on whether the agreement was "in consideration," meaning that it was a prerequisite of the marriage, or whether this agreement was simply "in contemplation" of marriage. The latter has been found not to be subject to the statute of frauds requirement of a writing. Steen v. Kirkpatrick, 84 Miss. 63, 69, 36 So. 140, 141 (1904). Regardless of whether the agreement was in consideration or only in contemplation of marriage, it is treated as a contract with contract formalities. The terms being enforced must be clear, otherwise there would not have been a meeting of the minds by the parties. Smith v. Smith, 656 So.2d 1143, 1147 (Miss. 1995). We therefore turn to the record for evidence of this agreement.
¶ 14. Mr. Flechas testified this way:
 COUNSEL: Did you and Eunice talk prior to the time you got married, about how you would handle financial matters?
 MR. FLECHAS: Yeah, we did. We decided we would keep everything separate, since we both had assets when we got married. She had assets — substantial assets, and I had substantial assets, and we both had different children, and we just kept them separate.
Later, Mr. Flechas was asked again to discuss the agreement.
 MR. FLECHAS. We just had something maybe, you know, informal, nothing special. And I gathered that she wanted to keep her money for her children, and I said, well, that's fine, I'll keep mine for mine.
Mrs. Flechas also explained the understanding:
 COUNSEL: Now, when you and Mike got married, did you want to keep your assets and investments separate from his, so that you could give them to your daughter, your children?
 MRS. FLECHAS: Yes.
¶ 15. Then Eunice testified that she "supposed" that at the time of the marriage Mike also wanted to keep his assets and investments separate from hers. The dialog cited above is the only evidence about the oral agreement. What is immediately obvious is that neither party spoke in explicit terms of the assets acquired during marriage. Both were questioned about "your assets," which *Page 301 
legally means each spouse's separate property brought to the marriage or separately acquired. "[I]n making equitable divisions of marital property upon divorce, chancellors are not limited to considering only the earning and cash contributions of each party to the accumulation of the property, but rather '[i]t is sufficient contribution if one party renders services generally regarded as domestic in nature.'" MacDonald v.MacDonald, 698 So.2d 1079, 1083 (Miss. 1997) (quoting Draper v. Draper,627 So.2d 302, 306 (Miss. 1993)).
¶ 16. With respect for the chancellor below, we find that this ambiguous oral prenuptial agreement is unenforceable. We do not find it enforceable on its own terms, whatever they might be, nor as a catch-all element under the standard test for dividing marital property. Whether it even contemplated keeping marital property from becoming marital property is unclear, and therefore it fails to perform that function. The agreement cannot be the barrier that prevents the chancellor from performing the calculation that normally must be undertaken in a divorce. The chancellor's obligation is to determine what property was accumulated during the marriage other than from inheritance or from the growth or exchange of separate property, and to make an equitable distribution of it; this does not involve measuring indirect financial contributions.
¶ 17. Having found the agreement unenforceable, we next look to Eunice's argument that the chancellor abused his discretion in finding that Eunice's non-economic contributions during the six-year marriage only amounted to $36,000. Under the doctrine of equitable distribution, marriage is considered a partnership with both spouses contributing to the marital estate in the manner in which they have chosen. Hemsley, 639 So.2d at 927. Eunice points out that she made a significant indirect economic contribution to the marriage through quitting her job in Georgia, ending her career, selling her home to move to Pascagoula to become Mike's wife, acting as custodian of the marital home and surrogate mother to Mike's younger son, and contributing to the stability and harmony of the marital relationship while sacrificing her own career during her best earning years. Eunice adds that she did not dispose of any marital assets, but rather she ran a household budget on only $2,000 per month though marital tax returns showed the parties generated between $217,000 and $379,000 per year in income.
¶ 18. In response, Mike fails to directly address any of Eunice's contentions.
¶ 19. It is clear that the chancellor erred in his determination of the value of Eunice's contribution. The law states that the contribution of marriage partners is equal. The first question is whether or not assets were accumulated; then we determine how those assets should be allocated.
¶ 20. In addressing this issue, we first look to those assets Eunice argues should have been classified as marital property, namely the income Mike earned during the marital years. Mike's net worth increased by more than $1.6 million during the marriage. While Mike claims this is a return on his pre-marital investments and is simply the result of good management, the proof in the record indicates otherwise.
¶ 21. The parties' income tax returns show an aggregate income of nearly $1.7 million during 1991 to 1996, and over $750,000 of that amount represents Mike's salary, excluding returns on investments. We do know that Eunice was allocated $2,000 per month, or $144,000 over the six-year period of the marriage on which to run the household. This leaves several *Page 302 
hundreds of thousands of dollars still unaccounted for. Mike testified that he kept some, took a little for spending money for himself and "probably spent some of it fooling around." Eunice's testimony was that "most of it was probably being invested. That was his general philosophy, to live on as little as possible, and invest the rest." The record supports the conclusion that most of Mike's income was kept by him in some form.
¶ 22. As previously discussed, the chancellor found that the parties had an "agreement" to keep their pre-marital estates separate and distinct. Eunice contends that while the parties did not commingle their pre-marital assets, there was no agreement that personal income would remain separate property.
 [N]on-marital assets may be converted into marital assets if they are commingled with marital assets or used for familial purposes, absent an agreement to the contrary. Commingled property is a combination of marital and non-marital property which loses its status as non-marital property as a result.
A L, Inc. v. Grantham, 747 So.2d 832 (¶ 18) (Miss. 1999) (citations omitted). "The burden is upon one claiming assets to be non-marital to demonstrate to the court their non-marital character."Id. at (¶ 23) (citing Hemsley, 639 So.2d at 915). Consequently, with this appeal Eunice is not asking for an award of any of Mike's pre-marital holdings or assets, rather she seeks an equitable division of any marital income not used to run the marital home, as she is entitled to receive under the law of equitable distribution.
¶ 23. Here, Mike's net worth substantially increased during the marriage, and approximately one half of this amount was paid to him as salary. Of this salary, which was approximately $750,000 over the course of six years, he gave Eunice $144,000 for use in paying bills, etc. In this Court's previous opinion on this matter, we stated:
 While it is certain that the majority of the assets generated during the marriage were the direct result of Miguel's business interests, the chancellor manifestly erred in concluding that Eunice made no contribution in this regard. "One type of contribution, such as financial, has equivalent value to another, such as domestic." "Although contributions of domestic services are not made directly to a retirement fund, they are nonetheless valid material contributions which indirectly contribute to any number of marital assets, thereby making such assets jointly acquired. And, it must be remembered, the goal of the chancellor in a divorce case is to do equity." Further, Ferguson provides for a consideration of the contribution to the maintenance to the marital home and the quantity and quality of time spent in this regard. Also, "[i]nstead of looking to the bare title of a marital asset, this Court, as should the trial courts, will continue to consider all of the facts and circumstances surrounding the accumulation of the marital assets, including noneconomic contributions and factors, when deciding how the marital property should be divided under our system of equitable distribution
Flechas, 724 So.2d at (¶ 11) (citations omitted) (emphasis added).
¶ 24. Mike has previously argued that profits from his business ventures were his alone to reap, but the unmistakable conclusion is that the salary he paid himself those six years certainly was acquired "during the course of the marriage" and, thus, is a marital asset subject to equitable distribution. We find no authority to the contrary. *Page 303 
¶ 25. We also note that both pension and retirement plans which are contributed to during the marriage are considered marital assets. SeeTraxler v. Traxler, 730 So.2d 1098 (¶ 17) (Miss. 1998); Reddell v.Reddell, 696 So.2d 287, 288 (Miss. 1997); Draper v. Draper, 627 So.2d 302, 306 (Miss. 1993). The chancellor in his finding of fact noted that the husband's increase in assets included $537,648 received from a company pension fund and rolled over into an IRA account, but that "the amount accumulated during the marriage was not made available to the Court." The court's finding clearly indicates that some portion of this pension fund should also have been included as a marital asset and subject to equitable distribution. Simply because the amount was uncertain or unclear does not relieve the chancellor from his responsibility of making an award. As previously stated, the burden was on Mike to demonstrate to the court what portion, if any, of this pension fund was non-marital. A L, Inc., 747 So.2d at (¶ 23).
¶ 26. During the marriage, Mike also purchased property on Cedar Street in Pascagoula, Mississippi, and received $300 per month in rental income. Although the property was placed in only Mike's name, there is no proof in the record to support the conclusion that this should not have been included as marital property. Although Mike used money from one of several accounts to purchase this property there is no proof that this was not money derived during the marriage or that the rental income from the property during the marriage should not have been classified as marital income.
¶ 27. Looking at Mike's asset reports from before and after the marriage, it appears that he did not keep his pre-marital assets separate from any assets derived during the marriage. Under the rules of equitable distribution, the failure to segregate non-marital assets could mean that they "may be converted into marital assets if they are commingled with marital assets or used for familial purposes, absent an agreement to the contrary. Commingled property is a combination of marital and non-marital property which loses its status as non-marital property as a result." Id. at (¶ 18). In the present case, the chancellor found that the parties did have an agreement that each would retain his or her separately accumulated pre-marital estates. However, as previously discussed, we do not find such agreement enforceable, nor relevant to separate assets acquired during the course of the marriage.
¶ 28. In making his ruling the chancellor found "that the indirect economic contribution of the Wife to the accumulation of the marital assets is $36,000." Under the law of equitable distribution such a finding was unnecessary and contrary to the law. Under equitable distribution each partner's contribution is deemed equal despite the difference in actual dollars contributed to the joint marital fund. We previously stated that in decisions concerning equitable division, chancellors not only consider monetary contributions of each party to the accumulation of the property, but also "[i]t is sufficient contribution if one party renders services generally regarded as domestic in nature. . . . We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value." MacDonald, 698 So.2d at (¶ 14). Thus, any domestic contributions made by Eunice were "of equal value" to the economic contributions of Mike. Id.
¶ 29. We find ourselves again in the position of remanding this case to the chancery court. We find that the chancellor *Page 304 
shall make an equitable distribution of all marital property, which is defined as any and all property acquired during the marriage, which specifically includes all the salary earned by Mike during the marriage and retained or invested by him and whatever the increase in his pension fund. Also, the value of the property on Cedar Street should be included unless Mike can show conclusively that the funds used to purchase this property came from an account or source which was exclusively made up of pre-marital assets. The court should also keep in mind the rule that commingling of funds changes the character of non-marital property.
¶ 30. Though we cannot determine the total of marital property accumulated during this marriage, all the evidence indicates that it was substantial. Eunice claims she is entitled to $300,000. Whatever the figure proves to be on remand, the chancellor must then make an equitable distribution of that property. That does not require an equal division, but it does require measuring each spouse's contribution to the marriage as having been equal. Ferguson, 639 So.2d at 927. We remand in order that the calculation and equitable division of marital property can be made.
 II. THE TRIAL COURT WAS MANIFESTLY IN ERROR IN AWARDING ONLY $36,000 IN LUMP SUM ALIMONY.
¶ 31. The chancellor awarded $36,000 in lump sum alimony. In making this award, the chancellor should have considered the following factors from Cheatham :
 This Court has addressed large lump sum alimony awards and has considered several factors:
 1) Substantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse's business.
 2) A long marriage.
 3) Where recipient spouse has no separate income or the separate estate is meager by comparison.
 4) Without the lump sum award the receiving spouse would lack any financial security. A closer analysis of these cases, however, reveal that the single most important factor undoubtedly is the disparity of the separate estates.
Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss. 1998) (citations omitted).
¶ 32. In this Court's first opinion, this Court cited to theCheatham factors, finding that an enormous disparity existed in the two estates, that Eunice contributed to the accumulation of total wealth by quitting her job and acting as housewife, and that six years was a marriage of significant length. Flechas, 724 So.2d at (¶ 15). TheCheatham court referred to various cases and found that "the single most important factor undoubtedly is the disparity of the separate estates."Cheatham, 537 So.2d at 438. See also Tutor v. Tutor, 494 So.2d 362
(Miss. 1986); Abshire v. Abshire, 459 So.2d 802, 804 (Miss. 1984);Schilling v. Schilling, 452 So.2d 834 (Miss. 1984); Jenkins v. Jenkins,278 So.2d 446, 449 (Miss. 1973).
 This Court has further stated that "the chancellor may divide marital assets, real and personal, as well as award periodic and/or lump sum alimony, as equity demands." This Court has additionally held that when a chancellor is charged with the division of the marital assets that "`if the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered.'" *Page 305 
Johnston v. Johnston, 722 So.2d 453 (¶ 12) (Miss. 1998) (citations omitted) (emphasis added).
¶ 33. The chancellor found Mike's estate to be valued at over $6 million, and Eunice's estate was valued at $500,000. Eunice points out that at age sixty she has been forced to return to the job market after a lengthy absence, having given up at least five of her best potential income-producing years as Mike's wife. She also claims that the maximum income she can now generate in a year is less than one tenth of what Mike generated in 1991 when they were married; therefore, the chancellor's award of only $36,000 barely does more than add insult to injury. In defense, Mike does no more than simply cite the lower court's findings.
¶ 34. In reviewing the Cheatham factors as we did in this Court's previous opinion, we again find that the chancellor has failed to properly analyze and apply them to the facts of this case. As previously described, Eunice contributed to the marriage by serving as manager of the Flechas household, by caring for Mike's children, and in serving as "chief cook and bottlewasher" for the family. Having given up teaching the years she was married to Mike, Eunice has lost her teacher certification, was substantially deprived of prime teaching years, and would be unjustly penalized should she not receive a more substantial award. Accordingly, we find that an award of lump sum alimony is appropriate and that the award by the chancery court is not sufficient under the circumstances. Beyond the obvious disparity of estates even after equitable distribution, we emphasize that Eunice has substantially contributed to the accumulation of Mike's wealth during the marriage by quitting her teaching job to become a housewife and manager of the home.See Hemsley, 639 So.2d at 915.
¶ 35. In this case, the chancellor has had two opportunities to award an appropriate amount of lump sum alimony. With this Court's earlier decision, we did not find error in the chancellor's decision, but rather uncertainty. Flechas, 724 So.2d at (¶ 1). Now on this second appeal, with the chancellor's having fully complied with our direction to explain the decision, and even after he made one alteration in favor of the complaining party, we are reluctant to require that this case yet again be returned to the trial court. However, we find such a remand to be unavoidable. We therefore reverse and remand this issue to the chancellor to award lump sum alimony in an amount more commensurate with the authorities cited herein, including a consideration of the Cheatham
factors as they pertain to Eunice's situation.
¶ 36. The Court notes that the chancery court awarded Eunice $2,000 per month in periodic alimony. Since that amount has not been challenged by either party that portion of the judgment is affirmed.
 CONCLUSION
¶ 37. We find that the chancellor was in error in finding that no assets were acquired by the parties during the marriage and that no equitable distribution was required. What we conclude is that the chancery court failed to properly find that a significant portion of the increase in Mike's assets and earnings during the years of marriage should have been classified as a marital asset subject to equitable distribution. We remand the matter to the chancery court for a full determination of the amount subject to equitable distribution, including not only income but also considering retirement funds and the real property acquired during the marriage.
¶ 38. On the issue of lump sum alimony, the court failed to take into consideration what Eunice gave up in abiding by *Page 306 
Mike's wishes not to work at a full-time job outside the home, and its seems the chancellor arbitrarily set an amount without considering the separate estates of the parties. Accordingly, we reverse and remand on this issue.
¶ 39 . THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT ISREVERSED AND REMANDED IN PART AND AFFIRMED IN PART. COSTS OF THISAPPEAL ARE TAXED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., LEE AND IRVING, JJ.,CONCUR. MYERS, J., DISSENTS WITH A SEPARATE WRITTEN OPINION JOINED BYBRIDGES, THOMAS AND CHANDLER, JJ.
[1] This amount was set at $1,500 with the marriage's inception in 1991 and continued to the summer of 1996 at which time Mike's son moved into the home. Thereafter, the amount was increased to $2,000 per month.