# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01920-SCT

*PHILLIP MOSLEY , SR.*

*v.*

*ANGELA MOSLEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/22/1999 |
| TRIAL JUDGE: | HON. SARAH P. SPRINGER |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | LISA MISHUNE ROSS |
| | BRIDGETT M. CLAYTON |
| ATTORNEY FOR APPELLEE: | LEIGH ANN KEY |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART; REVERSED AND RENDERED IN PART - 04/19/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/10/2001 |

### BEFORE PITTMAN, C.J., SMITH AND EASLEY, JJ.

### SMITH, JUSTICE, FOR THE COURT:

¶1. This case comes to this Court on appeal from the Chancery Court of Lauderdale County. Phillip Mosley, Sr. filed for divorce from Angela Mosley on the grounds of adultery, cruel and inhuman treatment, and irreconcilable differences. The couple finally agreed to divorce on the ground of irreconcilable differences with certain property divisions and child custody left for the court to decide. The chancery court granted the divorce and awarded custody of the two minor children to Angela. Phillip was required to pay $600.00 per month in child support, $150.00 per month in permanent periodic alimony, and $150.00 per month in lump sum alimony. From this ruling, Phillip appeals to this Court.

## FACTS

¶2. Phillip Mosley, Sr. ("Phillip") and Angela Mosley ("Angela") were married on Christmas Eve, 1982 in Lauderdale County, Mississippi, and finally separated in June of 1997. At the time of their divorce, they were the parents of two minor children, Phyllis Roshonda Mosley ("Roshonda"), born October 26, 1981, and Phillip Mosley, Jr. ("P.J."), born February 28, 1994.

¶3. This case began on September 5, 1997 when Phillip filed a Complaint for Divorce against Angela on the grounds of habitual cruel and inhuman treatment, adultery, and irreconcilable differences. On the same day, Phillip filed a Motion for Temporary Relief asking the court for temporary custody of both children, child

support, use of the marital residence, and control of all personal property. A summons was issued on this motion, and Angela was summonsed to appear in court on September 29, 1997. Angela did not appear on that day, and the temporary judgment for relief was granted to Phillip. Three days later, attorney Jim Williamson, representing Angela, attempted to set aside the temporary judgment for fraud. It is the policy of the Chancery Court of Lauderdale County not to modify temporary judgments. Therefore, there was never a modification.

¶4. This case was set for trial on numerous dates due to several substitutions of counsel, discovery matters, and other pending issues that delayed final adjudication of this matter. There is a dispute as to how the temporary judgment came about in the first place. Phillip argues that Angela just left the home, did not return, did not appear in court, and therefore, he was awarded temporary relief. Angela claims that there was a reconciliation between the couple that led her to believe Phillip had dismissed the court action. After hearing the testimony, the chancellor concluded that Angela had been misled by Phillip and as a result, lost temporary custody of her children whom she had been taking care of for years.

¶5. At the end of this long trial, the chancellor granted the couple their divorce on the grounds of irreconcilable differences. Phillip previously agreed that he would maintain health insurance on the minor children at his expense and that the parties shall each pay 50 percent of the expenses not covered by the medical insurance. Phillip was awarded exclusive use, ownership, and equity of the marital home. After making a record consideration of the *Albright* factors, the chancellor awarded custody of the minor children to Angela. Angela was awarded permanent periodic alimony in the amount of $150.00 per month, and lump sum alimony in the amount of $150.00 per month until those payments amounted to $10,000.00. Angela was awarded the living room suit, the mirrors, the washer and dryer, two televisions, and the microwave. Phillip was awarded exclusive use and control of the Toyota pickup truck. Phillip was ordered to pay $600.00 per month in child support for both minor children. Both parties were required to pay toward the sum of attorney's fees.

¶6. Aggrieved by the findings of the chancellor, Phillip raises the following assignments of error to this Court:

> **I. WHETHER THE CHANCELLOR ABUSED HER DISCRETION WHEN SHE ORDERED PHILLIP TO PAY $600.00 PER MONTH IN CHILD SUPPORT BUT PERMITTED ROSHONDA TO REMAIN IN PHILLIP'S CARE FOR AN INDEFINITE PERIOD?**
>
> **II. WHETHER THE CHANCELLOR ABUSED HER DISCRETION BY FAILING TO ADDRESS EACH OF THE *ALBRIGHT* FACTORS ON THE RECORD?**
>
> **III. WHETHER THE CHANCELLOR ABUSED HER DISCRETION WHEN SHE CONSIDERED MARITAL FAULT AND PRE-DIVORCE RELATIONSHIPS OF THE FATHER IN A CUSTODY HEARING?**
>
> **IV. WHETHER THE CHANCELLOR ABUSED HER DISCRETION IN CONCLUDING THAT THE BEST INTEREST OF THE COUPLE'S DAUGHTER WOULD BE SERVED IN THE CUSTODY OF HER MOTHER BUT DID NOT ORDER A DATE FOR THE CHILD TO JOIN HER MOTHER?**

**V. WHETHER THE CHANCELLOR ABUSED HER DISCRETION BY AWARDING AN EXCESSIVE AMOUNT OF PERIODIC ALIMONY, LUMP SUM ALIMONY, AND CHILD SUPPORT?**

**VI. WHETHER THE CHANCELLOR ABUSED HER DISCRETION IN REQUIRING PHILLIP TO PAY $500.00 IN ATTORNEY'S FEES AFTER SHE HAD AWARDED AN $1,800.00 INSURANCE CHECK TO ANGELA?**

## DISCUSSION

¶7. The standard of review in a domestic relations case is well-settled. This Court applies the familiar substantial evidence/manifest error rule. *Stevison v. Woods*, 560 So.2d 176, 180 (Miss.1990). "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Bell v. Parker*, 563 So.2d 594, 596-97 (Miss.1990). *See also Ferguson v. Ferguson*, 639 So.2d 921 (Miss.1994); *Faries v. Faries*, 607 So.2d 1204, 1208 (Miss.1992). This is particularly true in the areas of divorce, alimony and child support. *Tilley v. Tilley*, 610 So.2d 348, 351 (Miss.1992); *Nichols v. Tedder*, 547 So.2d 766, 781 (Miss.1989). The word "manifest," as defined in this context, means "unmistakable, clear, plain, or indisputable." *Black's Law Dictionary* 963 (6th ed.1990). *Turpin v. Turpin*, 699 So.2d 560, 564 (Miss.1997) (quoting *Magee v. Magee*, 661 So.2d 1117, 1122 (Miss.1995)).

## I.

¶8. The first question presented to this Court is whether the chancellor abused her discretion when she ordered Phillip to pay $600.00 per month in child support. Phillip claims that this was an abuse of discretion because Roshonda, who was 17 years old at the time, was allowed to stay in his care until something could be agreed upon between Angela and Roshonda. In other words, Phillip argues that the chancellor should have made some provision for Angela to refund Roshonda's portion of child support while she remained within his care.

¶9. In the chancery court's opinion, the chancellor noted that "Roshonda is in a difficult situation because of her being a senior in high school, although Angela [Mosley] is entitled to immediate custody of Roshonda, the court will leave it to her discretion as to when she should move to her mother's house in Gainesville." In a later portion of the opinion, the chancellor went on to say that "[t]he court does acknowledge that Roshonda may remain with her father for a period of time and Mrs. Mosley may decide to refund part of that child support to Phillip while Roshonda remains in his care, but that is not an obligation on her part, but only a suggestion from this court as what would be appropriate under the situation."

¶10. Our Court has consistently held that "[c]hild support benefits belong to the child, and not the parent who, having custody, receives such benefits under a fiduciary duty to hold and use them for the benefit of the child." *Cumberland v. Cumberland*, 564 So.2d 839, 847 (Miss. 1990). We have recognized that a child support judgment is awarded to the custodial parent for the benefit and protection of the child, the underlying principle being the legal duty owed to the child for the child's maintenance and best interest. *Hailey v. Holden*, 457 So.2d 947 (Miss.1984).

¶11. This Court finds that the chancellor abused her discretion when she stated that the mother was not obligated to refund any portion of the child support while Roshonda was living with her father. If Roshonda

is living with her father, and the child support belongs to Roshonda, then, the portion paid by Phillip on behalf of Roshonda should be used for her benefit.

¶12. Other jurisdictions have held that during periods of visitation with the noncustodial parent, the custodial parent is not obligated to return any portion of the child support payments. ***Bondi v. Bondi***, 586 N.W.2d 145 (Neb. 1998); ***Daigrepont v. Daigrepont***, 458 So.2d 637 (La. Ct. App.1984); ***Avin v. Avin***, 252 S.E.2d 888 (S.C. 1979). In ***Bondi***, the Court held that requiring this type of payment during temporary periods would not be in accord with sound or prevailing policy. ***Bondi***, 586 N.W.2d at 147. Additionally, the Louisiana Court of Appeals held that:

> Since the custodial parent has the obligation to see to the support, maintenance and education of the children the non-custodial parent is not entitled to any monetary assistance from the custodial parent even during periods of visitation. Such expenses incurred by the non-custodial parent during periods of visitation for food, lodging, etc., are obligations which the non-custodial parent assumes under his or her duty of mutual support.

***Daigrepont***, 458 So.2d at 638-39.

¶13. These cases are distinguishable from the case sub judice. In this case, the chancellor did not require any certain time when Roshonda would leave her father's care. This cannot be considered a visitation period since Roshonda has not been in her mother's custody since the divorce. In other words, she is not visiting her father but living with him. According to the chancellor, she may continue to live with her father while she completes her senior year of high school. This Court's precedents hold that child support benefits belong to the child. Therefore, we find that the chancellor should have made provisions for Roshonda to receive the child support benefits while she was under her father's care.

¶14. In ***Caldwell v. Caldwell***, 579 So.2d 543, 549 (Miss. 1991), this Court reversed and rendered a chancery court's finding that the defendant's son was emancipated. However, we also remanded the case to the chancery court for an exact determination of medical and dental expenses that the defendant's two minor children had incurred. We hold similar to ***Caldwell*** today. We render judgment in favor of Phillip for the amount of child support paid to Angela on Roshonda's behalf while she resided with Phillip. This Court has no way of determining in fact how long Roshonda resided with her father. Therefore, we remand to the chancery court for a determination of the exact amount that Phillip is entitled to be reimbursed for the child support he paid to Angela on behalf of Roshonda, while the child resided with him.

## II.

¶15. Next, we are asked to determine whether the chancellor abused her discretion by failing to address each of the ***Albright*** factors on the record. There is a limited scope of review of a custody decree on appeal to this Court. For instance, in ***Yates v. Yates***, 284 So.2d 46 (Miss. 1973), this Court held that "we, as an appellate court, will affirm the decree if the record shows any ground upon which the decision may be justified ... We will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interests of the child." ***Id.*** at 47.

¶16. Phillip argues to this Court that the chancellor did not make findings of fact in the record in regards to the ***Albright*** factors. We disagree. Examination of the chancellor's opinion, reveals that the ***Albright*** factors were clearly considered and applied. The chancellor not only addressed the ***Albright*** factors, but

also added and considered other factors that she believed were relevant to this particular case. The chancellor's opinion clearly adheres to this Court's caselaw and our expectations and requirements concerning specific factual references to the *Albright* factors considered by the chancellor in deciding issue regarding children. Each factor that was addressed by the chancellor will be briefly discussed below.

### (1) AGE OF THE CHILDREN

¶17. The chancellor noted that the children were 17 and 5. She stated that the age of the 17 year old would allow her to state a preference as to which parent she preferred to live with. That child's preference will be addressed below. The other child is 5, a child of "tender years." The chancellor concluded this factor did favor the mother. However, the chancellor correctly noted that this was only a factor, not a rule.

¶18. This Court has held that "the 'tender years' doctrine has undergone a weakening process in many jurisdictions as well as in this state." *Albright v. Albright*, 437 So.2d 1003, 1005 (Miss. 1983). Our Court reaffirmed the rule that the best interests of the child should be the polestar consideration in child custody cases. *Id.* All other factors are given equal weight. *Id.* Although the chancellor believed this factor favored Angela, this was only one factor to be considered in this case.

### (2) HEALTH OF THE CHILDREN

¶19. The chancellor specifically noted in the opinion that both children appear to be in good health.

### (3) SEX OF THE CHILDREN

¶20. The chancellor stated: "We have a female child and a male child and each child is of an age where the sex of the child does not impact one way or the other in favor of either parent."

### (4) PARENT WITH CARE PRIOR TO SEPARATION

¶21. The chancellor said that with respect to continued care prior to separation, it was uncontested that Angela had continued the care of the children and that she had done so in a capable and loving fashion.

### (5) BEST PARENTING SKILLS

¶22. The chancellor recognized that both parents were equally capable of parenting the two children.

### (6) EMPLOYMENT OF THE PARENTS

¶23. The chancellor stated that Phillip was required to travel with his employment and had left his children with a girlfriend and young babysitter on different occasions. Phillip is, however, stable in his employment and has had the same job for several years. Angela has had the same job for seven or eight months but previously has struggled with stability in employment. Currently, she is making a good wage in her employment.

### (7) PHYSICAL AND MENTAL HEALTH OF PARENTS

¶24. The chancellor found: "Both parents appear to be of good mental and physical health and the children appear to be of good health."

### (8) EMOTIONAL TIES BETWEEN CHILDREN AND PARENTS

¶25. The chancellor recognized the emotional ties between the children and their parents are still there. "The emotional ties are still there even with the older child, Roshonda, and her mother and certainly P.J. still has a tie with the mother and undoubtedly the children are also very much tied to their father."

### (9) MORAL FITNESS OF PARENTS

¶26. The chancellor noted that there were no moral fitness issues as to either parent of any substantial credibility. The chancellor found: "A lot was made about the relationship that Angela has with Gennard Keith, but there was not any evidence substantiating any allegation that she has had any inappropriate contact with Mr. Keith and certainly not any contact that would be detrimental to the minor children." In regards to Phillip, the chancellor stated that "this court cannot sanction Phillip's moving in his girlfriend for six months with her family and then moving her out and then substituting another woman with other children."

### (10) PREFERENCE OF THE CHILD

¶27. Roshonda testified that she preferred to live with her father. However, it was the chancellor's finding that her opinion was influenced by her residence in her father's home and the negative impact that he had on her relationship with her mother.

### (11) OTHER RELEVANT FACTORS

¶28. The chancellor commented on other factors that she considered before ruling that custody should be vested in Angela. First, while Roshonda had been with her father, there was recognized lack of supervision. Before Roshonda was licensed, she was in an automobile accident while rushing P.J. to the hospital. She was at home alone with P.J. without any supervision and was consistently having to play the role of the mother with her younger brother. The chancellor acknowledged that "Roshonda has been placed in the position of being a mother to her younger brother and that is very detrimental to Roshonda. Closeness is one thing but responsibility is another and this little girl has been put in a position where she is the mother of this little boy and that is inappropriate."

¶29. Second, the chancellor considered the fact that the children were very close to one another and should not be separated.

¶30. As the record clearly reflects, the chancellor did consider the *Albright* factors and made findings of fact in the record in regards to these factors.

### III.

¶31. The third issue raised to this Court is whether the chancellor abused her discretion when she considered marital fault and pre-divorce relationships of the father in a custody hearing. First, Phillip incorrectly states that the chancellor considered pre-divorce relationships in this custody hearing. While addressing each of the *Albright* factors in her opinion, the chancellor commented on the moral fitness of both parents. Specifically, the chancellor stated:

> The morals of the parents and the home environment are another issue to be considered and this court **cannot sanction** Phillip's moving in his girlfriend for six months with her family and then moving her out and then substituting another woman with other children.

A lot was made about the relationship that Angela has with Gennard Keith, but there was not any evidence substantiating any allegation that she has had any inappropriate contact with Mr. Keith and certainly not any contact that would be detrimental to the minor children. And that cannot be said of Phillip's relationship with Barbara Brown, whom he moved into the house with the children.

Phillip argues that the chancellor considered marital fault in the custody hearing. "Marital fault should not be used as a sanction in custody awards." *Albright*, 437 So.2d at 1005. As this Court has held on numerous occasions, a custody determination should not be used to punish an offending spouse. *Crowson v. Moseley*, 480 So.2d 1150, 1152 (Miss. 1985). "The wrongful conduct of a spouse is not a proper consideration unless it bears upon fitness to have control and custody of the child. And, even if it does have some bearing upon fitness, it should not be carried to any further degree than is necessary for the child's own interest." *Id.*

¶32. Here, however, the chancellor considered conduct with respect to an assessment of moral fitness as a factor to be considered under *Albright*. The fact that conduct which has a hearing on moral fitness might also be marital misconduct does not eliminate it from consideration under *Albright*. In considering another *Albright* factor, employment of the parents, the chancellor referred to Angela's numerous jobs. "Mrs. Mosley has had numerous jobs since the temporary. . .the court does not fault her for having nine jobs over the past two years as under the circumstances that is certainly understandable." The chancellor also referred to Angela being out on the street, without any support from her husband, and without her children. Phillip argues that these statements demonstrate how the chancellor considered marital fault in awarding custody to Angela. To the contrary, we find that the chancellor was only applying and weighing another factor to determine the best interests of the children. Since much had been made about Angela's unstable employment, the chancellor was being very clear and specific as to why the employment factor was not necessarily weighing against Angela. Angela had previously struggled in employment but had maintained her current job for seven or eight months.

¶33. For this reason, we find that marital fault was only addressed in specific *Albright* factors and the chancellor could clearly consider this conduct within the context of those factors to determine the best interests of the children.

## IV.

¶34. The fourth issue presented to this Court is whether the chancellor abused her discretion in concluding that the best interest of the couple's daughter would be served in the custody of her mother but did not order a date for the child to join her mother. It is somewhat ironic that Phillip, who was seeking custody of Roshonda in the first place, now complains that the chancellor erred by letting Roshonda stay with him for an indefinite period.

¶35. This issue again goes to the proper application of the *Albright* factors, and we have already found that the chancellor correctly applied each factor to the facts of this case. For this reason, the chancellor did not abuse her discretion in awarding custody of the children to Angela. With regard to Roshonda's being allowed to finish her senior year of high school without moving, the chancellor was simply accommodating Roshonda's wishes. This is certainly a unique situation and one that this Court has not seen before. However, allowing Roshonda to finish her senior year of high school does not conflict with the decision that permanent custody be lodged in the mother.

## V.

¶36. Phillip next argues that the chancellor abused her discretion in awarding an excessive amount of periodic alimony, lump sum alimony and child support. The chancellor's decision on alimony will not be disturbed on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error. *McNally v. McNally*, 516 So.2d 499, 501 (Miss.1987) (citing *Harrell v. Harrell*, 231 So.2d 793 (Miss.1970)). The amount of alimony awarded is a matter primarily within the discretion of the chancery court because of "its peculiar opportunity to sense the equities of the situation before it." *Holleman v. Holleman*, 527 So.2d 90, 94 (Miss.1988) (citing *Wood v. Wood*, 495 So.2d 503 (Miss.1986)). A chancellor can award alimony payable in one lump sum or periodic alimony, payable monthly, or both, dependent upon the circumstances of the parties. *Miller v. Miller*, 173 Miss. 44, 159 So. 112 (1935).

¶37. While being cross-examined, Phillip testified to having a net monthly income of $2,992.07. Bank statements were also submitted from July '97 to March of '99 which show that monthly deposits were made into a savings account and into a checking account, and that those deposits varied month to month in regards to both accounts. Every month from July until March, Phillip's deposits exceeded his alleged income. Phillip testified that in addition to his monthly salary, he receives money for housing and money for food. "So, that's not taxable income. So I don't claim that." All of his monthly benefits total between $3,800.00 and $4,000.00 but this varies somewhat from month to month. For example, in December of 1998, $2,776.00 was deposited into his checking account and $4,126.00 was deposited into his savings account. Additionally, in February of 1999, $4,700.00 was deposited into his checking account alone.

¶38. Phillip alleges that the judgment of the chancellor was excessive and that he will not be able to live a "decent life" if required to pay monthly fees of $900.00. This total includes child support of $600.00, permanent periodic alimony of $150.00, and lump sum alimony of $150.00. At a minimum, Phillip brings home $2,992.07 a month. As earlier mentioned, the bank statements reflected deposits that exceeded this amount every month. Assuming that Phillip does, in fact, only bring home $2,992.07, when $900.00 is taken away from that, Phillip is still left with $2,092.07. Also, Phillip claims that his monthly living expenses total $972.00 a month. This would leave Phillip with a minimum total of $1,120.07 a month **after** all bills and other expenses are paid.

¶39. In *Armstrong v. Armstrong*, 618 So.2d 1278 (Miss. 1993), this Court set out factors that should be considered when awarding alimony and support. Those factors include (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties each pay, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; or (12) any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support. *Id.* at 1280; *Brabham v. Brabham*, 226 Miss. 165, 84 So.2d 147, 176 (1955).

¶40. The chancellor found that Phillip is stable in his employment and due to the benefits associated with his employment, he is in a far better financial position than Angela. He is also receiving exclusive use and possession of the marital home and all equity in the marital home. The chancellor also considered the disparity in the separate estates of the parties. After specifically referring to her consideration of

*Hammonds v. Hammonds*, 597 So.2d 653 (Miss. 1992) and *Armstrong*, 618 So.2d at 1280, the chancellor concluded that Phillip was required to pay $150.00 in lump sum alimony and $150.00 in permanent periodic alimony. After all of his expenses are paid, Phillip is left with a minimum of $1,120.07 a month.

¶41. For these reasons, we find that the chancellor did not abuse her discretion in requiring Phillip to pay permanent periodic alimony in the amount of $150.00 per month, lump sum alimony in the amount of $150.00 per month, and child support in the amount of $600.00 per month.

## VI.

¶42. The last issue presented to this Court is whether the chancellor abused her discretion in awarding Angela $500.00 for her attorney's fees. Phillip claims that this was error because the chancellor had already awarded Angela approximately $1,800.00 from an insurance check when the couple's BMW was totaled.

¶43. "The decision as to whether to award attorney's fees in a divorce case is within the sound discretion of the chancellor." *Fisher v. Fisher*, 771 So.2d 364, 369 (Miss. 2000) (citing *Grogan v. Grogan*, 641 So.2d 734, 744 (Miss. 1994)). In her opinion, the chancellor stated that "[p]art of the attorney's fees incurred in this civil action certainly have come due to the entry of a temporary order which stripped a mother of her children, stripped a woman of her home and left her on the street with no place to go and no transportation. Certainly her husband should pay *part* of the attorney's fees that she has incurred as he is better able than she to pay for those attorney's fees. The court finds that Phillip Mosley shall pay to Angela Mosley the sum of $500.00 *toward* the attorney's fees that she has incurred in this civil action."

¶44. Throughout the course of this trial, the chancellor determined that Phillip was in a better financial situation than Angela. Phillip was only made to pay a small portion of the attorney's fees that had been incurred. The chancellor held that a portion of the fees had accrued due to the fact that Angela had to defend herself against a temporary judgment. The chancellor found that Angela had been misled by Phillip to believe that the action would be dismissed and therefore she did not appear in court and the temporary judgment was granted against her.

¶45. For this reason, this Court finds that the chancellor did not abuse her discretion in requiring Phillip to pay $500.00 toward the attorney's fees.

## CONCLUSION

¶46. We find that the chancellor committed manifest error by stating that Angela was not obligated to return any portion of child support to Phillip that would have been paid on behalf of Roshonda. The chancellor should have granted Phillip some relief from child support payments while Roshanda resided with him. We therefore reverse and render judgment in favor of Phillip on the child support issue. We further remand this case to the chancery court for a determination of the amount that Phillip is entitled to be reimbursed for the child support he paid during the period Roshonda resided with him.

¶47. The chancellor was correct in applying the *Albright* factors to this case, determining the best interest of the children, and in awarding child support, alimony, and attorney's fees to Angela. On these issues, we affirm the chancellor.

¶48. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART; REVERSED AND**

**RENDERED IN PART.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR.**