829 So.2d 1267 (2002)
Dawn Leslie MASINO, Appellant/Cross Appellee,
v.
Leonard MASINO, Appellee/Cross Appellant.
No. 2001-CA-01424-COA.
Court of Appeals of Mississippi.
November 5, 2002.
*1269 William E. Tisdale, Biloxi, for Appellant.
Damon Scott Gibson, Gulfport, for Appellee.
Before SOUTHWICK, P.J., THOMAS and CHANDLER, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Leonard and Dawn Masino were granted a divorce based upon irreconcilable differences by the Harrison County Chancery Court. Mr. Masino was granted physical custody of the minor child and also child support. On appeal, Mrs. Masino claims that she should have received the following: custody of the minor child, periodic alimony, child support, the child's tax exemption, and attorney's fees. Mr. Masino cross-appeals on the abatement of the child support. We affirm except for the abatement of child support. That issue is remanded to the chancellor.

FACTS
¶ 2. Leonard and Dawn Masino were married in 1996. One child was born to the marriage, a daughter, Melanie, in the fall of that same year. Throughout the marriage, Mr. Masino worked as a slot machine technician, earning approximately $27,000 per year. Prior to the marriage, Mrs. Masino worked in different positions, including cocktail waitress and retail management. At the time of trial, she was working part-time as a hotel maid, earning approximately $450 per month.
¶ 3. The marriage appears to have been unstable almost from the beginning. Six weeks after Melanie's birth, the girl was taken by her mother to central Florida where some members of Mrs. Masino's *1270 family resided. There they stayed for two weeks before returning to the marital home. Taking the child to Florida became a pattern for Mrs. Masino over the next four years. One stay lasted nearly a year. The cause was disputed. Dawn Masino claims her husband threw her out of the home, while Leonard Masino claims that she simply left after they had argued.
¶ 4. Mr. Masino filed for divorce in January 2000. At the same time, he filed a motion for temporary and emergency relief to enjoin Mrs. Masino from removing the child from the jurisdiction. The relief was granted. The chancellor sought to have the parties arrange a visitation schedule. Approximately two weeks later, Mr. Masino returned to the chancery court with a new motion for temporary relief, requesting the court assign a visitation schedule as Mrs. Masino refused to permit visitation with the child on all but one occasion. After the motions were filed, Mrs. Masino left the home with their child without advising Mr. Masino of their location.
¶ 5. Mr. Masino again filed a motion for emergency relief in order to locate the child, which was granted. Mrs. Masino subsequently filed for temporary relief. At the hearing on the matter, the chancellor entered a temporary order granting physical custody of the child to Mr. Masino four days per week and ordering Mr. Masino to pay child support of $500 per month.
¶ 6. Prior to the trial on the divorce action, the parties settled all property division matters, leaving only the issues of child custody, support, alimony and division of miscellaneous child-rearing expenses for the chancellor's determination. Judgment was issued on July 3, 2001, making legal custody joint but giving physical custody to Mr. Masino. Visitation for Mrs. Masino included the entirety of the summer school holidays except for one week in July. Mrs. Masino was ordered to pay $120 per month in child support. The child's income tax exemption was granted to Mr. Masino. No alimony was awarded. Both parties' request for attorney's fees was denied.

DISCUSSION

1. Custody of the minor daughter to Leonard Masino.
¶ 7. Mrs. Masino's first point is that the chancellor's custody decision was not in the child's best interests. Before analyzing that specific complaint, we look at a procedural question.
¶ 8. The chancellor established joint custody for the child. This Court has on several occasions concluded that because of language in the irreconcilable differences divorce statute, joint custody could not be awarded without the consent of the parties. See Dearman v. Dearman, 811 So.2d 308, 312-15 (Miss.Ct.App.2001) (Payne, J., citing Miss.Code Ann. § 93-5-24(2) (Supp.2000), and finding that there must be joint consent since the statute states that "joint custody may be awarded... in the discretion of the court, upon application of both parents"); Wolfe v. Wolfe, 766 So.2d 123, 126-127 (Miss.Ct. App.2000) (Thomas, J., same.) The Supreme Court has recently, without addressing this statute and in a case in which divorce was contested, found that "if the parents cannot agree on who should have primary custody of the children, it is probably the better course for the chancellor to make that decision for them reserving joint custody for parents who are willing to work together to make joint custody feasible." Waller v. Waller, 754 So.2d 1181, 1184 (Miss.2000).
¶ 9. Despite these questions, we find that joint custody was permissible here because the parties signed and filed a *1271 document indicating what they had not agreed upon and what therefore needed to be decided by the chancellor. Among the issues was "Child custodysole physical custody or joint legal and physical custody." What our precedents have discussed is that section 93-5-24(2) requires that there be "application of both parents" before joint custody is permitted in a divorce granted on the basis of irreconcilable differences. We find this to be a joint application since it indicates an offer to the chancellor to resolve the parties' differences by using that option.
¶ 10. Mrs. Masino's central argument that the chancellor erred as to custody since she claims that absent other compelling reasons, a child of tender years should be placed with the mother.
¶ 11. We begin by noting that whatever the decision, the chancellor is in the best position to determine the credibility of the witnesses. Madden v. Rhodes, 626 So.2d 608, 616 (Miss.1993). We will not disturb a chancellor's findings when supported by substantial evidence. Id.
¶ 12. In making decisions of child custody, the best interest of the child is to dominate the analysis. Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994). There are factors that must be taken into account when making such decisions. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The record reveals that in making findings of fact for each of the Albright factors, the chancellor meticulously explained the reasoning upon which the findings were based. The chancellor found that eight of the Albright factors favored placing custody with Mr. Masino, primarily due to the stability of Mr. Masino's home and his employment history, his extensive involvement in the child's pre-school activities, and the support of his extended family.
¶ 13. At the same time, the chancellor found that Mrs. Masino's deliberate and ongoing interference in the father-daughter relationship was extreme and not in the child's best interest. Mrs. Masino was highly uncooperative with visitation by Mr. Masino and frequently made extremely derogatory comments about him in their daughter's presence. The chancellor also found that the father and child enjoyed a very close relationship which would be damaged by Mrs. Masino's apparent plan to move to Florida with the child if granted custody.
¶ 14. The chancellor considered the child's age in making the custody determination. It was acknowledged that "the fact that Melanie is a young girl may slightly favor the mother's custody." However, the chancellor found that the mother's deliberate interference with the father's relationship and her failure to attend the parenting and co-parenting classes recommended by the court-appointed psychologist negated any presumption regarding the benefits of the mother's having custody.
¶ 15. The "tender years" doctrine has not been completely abandoned by our court, but age is merely one factor to be considered in a best interest analysis. Sobieske v. Preslar, 755 So.2d 410, 413 (Miss. 2000). The chancellor found that all the remaining factors negated any presumption that the remnants of the "tender years" doctrine may raise. The chancellor's findings were thorough, deliberate and supported by substantial evidence. We will not disturb them.

2. Periodic alimony to Dawn Masino.
¶ 16. As with child custody, the chancellor has broad discretion in determining the amount and type, if any, of alimony to award to a party. Pearson v. Pearson, 761 So.2d 157, 166 (Miss.2000). We will not overturn a denial of alimony unless it is so unjust or oppressive as to *1272 constitute an abuse of discretion. McNally v. McNally, 516 So.2d 499, 502 (Miss. 1987).
¶ 17. Several factors are considered when deciding whether to allocate periodic alimony:
(1) the income and expenses of the parties;
(2) the health and earning capacity of the parties;
(3) the needs of each party;
(4) the obligations and assets of each party;
(5) the length of the marriage;
(6) the presence or absence of minor children in the home;
(7) the age of the parties;
(8) the standard of living of the parties;
(9) the tax consequences of spousal support;
(10) fault or misconduct;
(11) wasteful dissipation of assets;
(12) any other factor bearing on justness and equity.
Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 18. The chancellor took these factors into consideration in deciding not to award alimony in any form to Mrs. Masino. The chancellor found that Mrs. Masino had the capacity to earn a living but chose to work only part-time, that the marriage was of brief duration and accumulated no significant marital assets, and that any alimony awarded would have no appreciable impact on Mrs. Masino's standard of living but would work a hardship upon Mr. Masino's ability to provide for their daughter. The agreed property distribution was also adequate in light of the parties' limited assets.
¶ 19. These considerations do not constitute an unjust or oppressive decision. The chancellor's analysis was supported by substantial evidence and is adequately explained in the record.

3. Dependent tax exemption to Leonard Masino.
¶ 20. Considerations for awarding the dependent child tax exemption include these:
(1) the value of the exemption at the marginal tax rate of each parent;
(2) the income of each parent;
(3) the age of the child and how long the exemption will be available;
(4) the percentage of the cost of supporting the child borne by each party;
(5) the financial burden assumed by each parent under the property settlement.
Louk v. Louk, 761 So.2d 878, 884 (Miss. 2000).
¶ 21. The chancellor made no specific findings of fact on this portion of the judgment, but merely awarded the exemption to Mr. Masino. However, where a chancellor rules without making specific findings of facts on an issue such as this, we will assume the resolution of factual disputes in favor of the appellee. Bredemeier v. Jackson, 689 So.2d 770, 777-78 (Miss.1997).
¶ 22. At Mrs. Masino's present level of income, a tax exemption would not offer any proven benefit, while the benefit to Mr. Masino is meaningful. Mr. Masino presently bears the entire cost of supporting the minor child. The property settlement assigned no assumption of debt to Mrs. Masino while Mr. Masino remains liable for the home mortgage. From the record, it is apparent that the chancellor awarded the tax exemption to the party for whom it would provide significant benefit. We find no clear error in this decision.

4. Child support
¶ 23. We combine for discussion Dawn Masino's fourth point of error and *1273 Leonard Masino's cross-appeal. Following the trial on the merits, the chancellor ordered Mrs. Masino to pay child support in the amount of $120 per month. This amount was to be halved during the summer months when Mrs. Masino had full-time visitation with Melanie.
¶ 24. Following judgment, Mrs. Masino filed a motion to reconsider this award. The motion made no specific argument as to why the award should be altered. However, in ruling on the motion, the chancellor ordered an abatement until further order of the court based upon Mrs. Masino's inability to pay. He found that she had a much greater earning potential but was "content to make only $451 a month at this time." The chancellor also noted the award was only a nominal amount well within the financial capabilities of most fully employed persons.
¶ 25. The underlying principle of child support is the legal duty of each parent to provide for the maintenance of a child. Thrift v. Thrift, 760 So.2d 732, 737 (Miss.2000). Though Mrs. Masino has extensive visitation with the child, including the entire summer, there is no obligation generally for the custodial parent to provide support allocable to periods of visitation. The chancellor took the visitation into account by reducing what Mrs. Masino would pay during the summer months.
¶ 26. The chancellor's approach is consistent with a precedent in which a child whose custody was placed with the mother, nonetheless was allowed to remain with the father for an indefinite period of time. Mosley v. Mosley, 784 So.2d 901, 905 (Miss.2001). The Supreme Court did not require the custodial parent to pay child supportwhich is what Mrs. Masino seeks herebut did state that it was an abuse of discretion not to require the custodial parent to refund some portion of the child support while the child was living with her father. Id. Here, there was no need for a refund since the chancellor allowed the parent with the support obligation to retain half of what otherwise would be paid. As to support paid by the custodial parent when the child enjoys extended visitation with the other parent, the court noted that generally was not needed:
Since the custodial parent has the obligation to see to the support, maintenance and education of the children the non-custodial parent is not entitled to any monetary assistance from the custodial parent even during periods of visitation. Such expenses incurred by the non-custodial parent during periods of visitation for food, lodging, etc., are obligations which the non-custodial parent assumes under his or her duty of mutual support.
Id., quoting Daigrepont v. Daigrepont, 458 So.2d 637, 638-39 (La.Ct.App.1984).
¶ 27. Absent special circumstances not shown here, a chancellor acts properly simply by reducing the child support obligation during long periods of visitation.
¶ 28. However, we cannot find support for the decision to abate the child support payments owed by Mrs. Masino. Mrs. Masino's claims not to be financially capable of paying the ordered support. A party claiming financial inability to pay bears the burden of establishing that claim. Varner v. Varner, 666 So.2d 493, 497 (Miss.1995). The obligation to support one's child will not be modified to suit a parent who merely chooses not to work. Id. at 497.
¶ 29. The record is replete with testimony and factual findings that Mrs. Masino is capable of obtaining full-time employment sufficient to meet her financial obligations. She stated that if she moved to Florida, she would obtain full-time employment. There is nothing *1274 apparent from the record as to why Dawn Masino should be excused from her support obligation when she is capable but simply unwilling to earn. The needs of the child are not abated. A parent may not avoid her obligation to support a child simply by refusing to work. If she continues to be underemployed, unpaid support would at least become a debt that she would when financially able be required to satisfy. Support of children is an obligation of each parent. Generally the custodial parent supports by expenditures made for the home, food, and other needs, while the non-custodial parent provides the support through direct payments. Here, Mrs. Masino should not be granted indefinite release from her obligations, which as the chancellor noted, are minimal at $120 per month.
¶ 30. We remand to the chancery court for entry of an order to Mrs. Masino to show cause why she should be further excused. No effect on the prior abatement is to be implied from our ruling.

5. Attorney's fees
¶ 31. No attorney's fees were awarded. The chancellor found that neither party's financial circumstances would permit it. In addition, Mrs. Masino was not entitled to fees because her uncooperative attitude necessitated repeated intervention by the chancery court and accrual of unnecessary legal expenses for Mr. Masino. Only Mrs. Masino appeals this ruling.
¶ 32. This decision is supported by substantial evidence and is not an abuse of discretion.
¶ 33. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED IN ALL RESPECTS ON DIRECT APPEAL; THE JUDGMENT IS REVERSED ON CROSS-APPEAL AND REMANDED FOR PROCEEDINGS ON THE COMMENCEMENT OF CHILD SUPPORT. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.