877 So.2d 485 (2003)
Paula L. JOHNSON, Appellant,
v.
Richard E. JOHNSON, Appellee.
No. 2002-CA-01552-COA.
Court of Appeals of Mississippi.
December 16, 2003.
Rehearing Denied April 6, 2004.
Certiorari Denied July 9, 2004.
*487 William B. Jacob, Joseph A. Kieronski, Daniel P. Self, Meridian, attorneys for appellant.
Thomas T. Buchanan, attorney for appellee.
EN BANC.
GRIFFIS, J., for the court.
¶ 1. Paula L. Johnson appeals a chancellor's division of marital assets, award of alimony and attorney's fees, pursuant to a consent for divorce under Mississippi Code Annotated Section 93-5-2. We reverse and remand for an equitable division of the parties' marital property and/or for a proper and sufficient award of lump sum and/or periodic alimony.

I. Statement of Facts and Procedural History
¶ 2. Paula and Richard E. Johnson were married on November 25, 1988, and they separated in July of 2000. Two children were born to the parties.
¶ 3. During their marriage, Richard conducted business through three closely held *488 corporations: Southeastern Lumber, Inc., Southeastern Kilns, Inc. and Richard E. Johnson, Inc. Richard was the majority shareholder of each of these corporations. Richard E. Johnson, Inc. was formed before the marriage and the other two were formed after the parties were married. Occasionally, Paula worked at and assisted Richard in these businesses. She also held several other jobs. Paula's primary role was that of a homemaker and stay-at-home mom.
¶ 4. Paula filed for divorce in August of 2000, alleging adultery, habitual cruel and inhuman treatment and irreconcilable differences.
¶ 5. On March 9, 2001, the chancellor entered an order granting temporary relief. The chancellor awarded Paula custody of the children and, among other relief, ordered Richard to pay Paula temporary child support of $1,500 per month and temporary alimony of $1,500 per month.
¶ 6. On May 15, 2002, the parties agreed to an irreconcilable differences divorce and executed a consent for divorce. On June 25, 2002, the parties executed a supplemental consent for divorce. The consent for divorce and the supplemental consent for divorce itemized the stipulated and contested issues. The chancellor was presented with sixteen contested issues. Three of the contested issues are relevant to this appeal. They are:
1. Alimony: Whether or not Richard E. Johnson is to pay unto Paula Johnson alimony, and if so, whether it should be lump sum, periodic and/or rehabilitative.
14. Equitable Division of Businesses: Determine the equitable division of all businesses of the parties and establish the procedure for such equitable division to occur.
16. Attorney's Fees: Whether or not Richard E. Johnson should pay unto Paula L. Johnson reasonable attorney's fees and costs of this action and if so, in what amount and how should same be paid.
¶ 7. On August 22, 2002, the chancellor executed a memorandum opinion and judgment of divorce. The chancellor concluded that none of the three corporations were marital assets and, therefore, were not subject to equitable division. The chancellor awarded Paula $750 per month in permanent periodic alimony and denied her request for lump sum alimony. The order acknowledged the supplemental consent for divorce wherein the parties agreed that Paula was entitled to $250,000 from Richard for her interest in the marital home. The chancellor found that Paula had the ability to pay her attorney's fees and denied her request for attorney's fees and costs.
¶ 8. Paula now appeals and cites the following assignments of error:
A. The court erred by going outside the consent for divorce in changing the character of property from marital property to non-marital property contrary to the agreement of the parties and the proof presented at trial.
B. The court erred in awarding an inadequate amount of periodic alimony considering the earning capacity of the parties.
C. The court erred in failing to award lump sum alimony, or in the alternative, failed to equitably divide the assets of the parties.
D. The court erred by failing to award Paula Johnson an attorney's fee and thus forcing her to dissipate the funds awarded to her in order to pay her attorney.
*489 Finding the chancellor in error on issues A, B and C, we reverse and remand for further proceedings consistent herewith.

II. Standard of Review
¶ 9. The standard of review that appellate courts must follow in domestic matters is well settled:
This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. In other words, on appeal this Court is required to respect the findings of fact by the chancellor supported by credible evidence and not manifestly wrong. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997) (citations omitted). Nonetheless, if manifest error is present or a legal standard is misapplied, this Court will not hesitate to reverse. Tilley v. Tilley, 610 So.2d 348, 351 (Miss.1992).
Flechas v. Flechas, 791 So.2d 295, 299(¶ 7) (Miss.Ct.App.2001).

III. Analysis
¶ 10. In the dissolution of a marriage, the division of property and the award of alimony are to be considered together. Burnham-Steptoe v. Steptoe, 755 So.2d 1225, 1233(¶ 25) (Miss.Ct.App.1999). The Mississippi Supreme Court has established several guidelines that must be followed for: (a) the equitable division of assets, Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994); (b) an award of periodic alimony, Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993); and (c) an award of lump sum alimony, Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). These guidelines are relevant to this appeal and will be discussed below.
¶ 11. The supreme court has also established a procedure that must be followed for the chancellor to consider the appropriate remedies. The court has held that "[a]limony is not a completely independent financial issue in a domestic case, in which its consideration is hermetically sealed from other financial matters." Buckley v. Buckley, 815 So.2d 1260, 1262(¶ 10) (Miss.Ct.App.2002). Alimony together with equitable distribution of property work together to provide for the parties after divorce. Id. "Therefore, where one expands, the other must recede." Ferguson, 639 So.2d at 929. "If the marital assets, after equitable division and in light of the parties' non-marital assets, will adequately provide for both parties, then `no more need be done.'" Id. If an equitable division of marital property, considered with each party's non-marital assets, leaves a deficit for one party, then alimony should be considered. Id.; see King v. King, 760 So.2d 830, 835-36(¶ 18) (Miss.Ct.App.2000) (summary of procedure to be followed).
¶ 12. Ferguson creates a roadmap for the chancellor to "conclude the parties' legal relationship, leaving each in a self-sufficient state." Ferguson, 639 So.2d at 929. The chancellor, therefore, must initially determine the claim for equitable division of marital property followed by the consideration of an award of lump sum and/or periodic alimony.
¶ 13. In Lauro v. Lauro, 847 So.2d 843, 850 (¶ 17) (Miss.2003), the Mississippi Supreme Court determined that since the case was remanded for further consideration of equitable division, the chancellor should be "instructed to revisit the awards of alimony and child support after [s]he has properly classified and divided the marital assets." Because we reverse this case and remand it to the chancellor for further proceedings, we include a complete discussion of the error we find on all issues.
*490 ¶ 14. On remand, the chancellor will have all tools of marital dissolution available: equitable division, lump sum alimony, periodic alimony and child support. The chancellor should not construe our opinion as to favor one over the other. Indeed, the chancellor may correct the error by granting an appropriate equitable division of assets, an appropriate award of lump sum alimony, or an appropriate award of periodic alimony, or any combination thereof.

A. Whether the trial court erred by changing the characterization of certain property from marital property to non-marital property contrary to the parties' agreement in the consent for divorce.
¶ 15. The first assignment of error requires us to review the chancellor's decision on the equitable division of marital property. Our review focuses on the chancellor's decision that Paula was not entitled to an equitable division of the stock Richard owned in three corporations: Southeastern Lumber, Inc., Southeastern Kilns, Inc., and Richard E. Johnson, Inc.
¶ 16. The chancellor's memorandum opinion held:
In considering equitable distribution of marital assets, the court must determine which assets are marital, pursuant to Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994), and then apply the factors set out in Ferguson v. Ferguson, 639 So.2d [921] 928 (Miss.1994).
Richard E. Johnson, Inc. was a business started by Richard prior to the marriage. During the marriage, the value of the business has increased due to Richard's significant efforts. Paula did work as a secretary in the business from time to time, and helped out as Manager at the Church's Chicken as needed, but nothing that Paula did during the marriage ripened into any kind of ownership in Richard's business.
Paula enjoyed the fruits of Richard's efforts in the business, and marital assets were accumulated outside the business by virtue of the success of the business. Richard E. Johnson, Inc. is synonymous with Richard E. Johnson and the company's value (apart from its basic operating assets) is dependant upon Richard's involvement in the business. This business therefore is a non-marital asset not subject to equitable distribution. The same analysis is applicable to Richard's other businesses, Southeastern Lumber, Inc. and Southeastern Kilns, Inc., and these two businesses are likewise are non-marital assets, not subject to equitable distribution....
¶ 17. We consider this assignment of error in two separate parts. First, whether the chancellor erred in the interpretation of the authority granted under the parties' consent for divorce. Second, whether the chancellor erred in the classification of the assets, i.e., that the businesses were non-marital assets and not subject to equitable division.

1. Whether the chancellor erred in interpreting that the parties' consent to divorce did not stipulate that all businesses were marital property subject to division.
¶ 18. Paula contends that the parties stipulated, in the consent to divorce, that "all businesses of the parties" were to be classified as marital property. The significance, of course, is that under an irreconcilable differences divorce, pursuant to Mississippi Code Annotated Section 93-5-2(3) (Rev.1994), the written consent must state that the parties voluntarily consent to permit the court to decide the issues upon which they cannot agree, and the *491 consent defines the issues that are to be contested and resolved by the chancellor. Cook v. Cook, 725 So.2d 205, 206(¶ 4) (Miss.1998); Massingill v. Massingill, 594 So.2d 1173, 1177 (Miss.1992).
¶ 19. Here, the consent to divorce framed the contested issue as follows:

14. Equitable Division of Businesses: Determine the equitable division of all businesses of the parties and establish the procedure for such equitable division to occur.
¶ 20. Paula argues that this language indicates that the parties agreed that "all businesses" were marital property, subject only to the chancellor's division. In other words, Paula contends that the Hemsley determination (i.e., the classification of assets as marital or non-marital) had been considered and agreed to by the parties. Paula concludes that the determination of marital versus non-marital property was not a contested issue before the chancellor, and the chancellor should have simply divided the assets. Richard argues that the chancellor did not misinterpret the consent for divorce and that it was proper for the chancellor to first classify the assets as marital or non-marital.
¶ 21. The chancellor interpreted the language of issue no. 14 to grant the court the authority to begin with the Hemsley classification of property. However, reading issue no. 14 in context with issue no. 15, the chancellor's interpretation was reasonable and logical. Issue no. 15 states:

15. Equitable Division of Other Assets: Equitably divide any other asset(s) of the parties not specifically covered herein.
¶ 22. In considering the express authority the parties granted, the chancellor understood that she was to consider the entire concept of equitable division when considering the businesses (issue no. 14) and to simply divide any other assets (issue no. 15). We are of the opinion that the chancellor correctly interpreted the scope of the court's authority granted by the consent for divorce. Therefore, we conclude that the chancellor had the authority, under Mississippi Code Annotated Section 93-5-2(3) (Rev.1994), to begin her consideration with a Hemsley determination of the classification of marital versus non-marital assets.

2. Whether the chancellor erred in the classification of assets.

a. The chancellor erred in determining that Paula's domestic contributions and efforts did not ripen into any kind of ownership interest.
¶ 23. The definition of "marital" property was established in Hemsley, where the supreme court held:
We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value.

Hemsley, 639 So.2d at 915 (emphasis added). Hemsley required the chancellor to consider (a) the assets accumulated during the marriage as marital assets, and (b) that Paula's domestic contributions and efforts were equal in value to Richard's economic contributions and efforts.
¶ 24. The chancellor held that Richard's stock in three closely held corporations was a non-marital asset. The chancellor concluded that Paula's efforts contributed *492 negligibly to the value of the businesses or that the corporations' success was due solely to Richard's efforts and involvement. This is contrary to Hemsley. We reverse because the chancellor was manifestly wrong and clearly erred in applying Hemsley in the determination of marital assets. We remand this case for the chancellor to equitably divide the value of Richard's stock in the three corporations as a marital asset.

b. The chancellor erred in determining that the stock of Southeastern Lumber, Inc. and Southeastern Kilns, Inc. was a non-marital asset.
¶ 25. The chancellor erred in classifying the stock of Southeastern Lumber, Inc. and Southeastern Kilns, Inc. The stock of both of these corporations should have been classified as marital property because each corporation was organized, incorporated and began operations during the term of the marriage. Each corporation was funded with assets from the parties' marriage or income earned during the marriage. Therefore, the chancellor was clearly in error in denying an equitable division of the stock of Southeastern Lumber, Inc. and Southeastern Kilns, Inc. The chancellor's decision should be reversed and remanded for a proper equitable division of these marital assets.

c. The chancellor erred in determining that the stock of Richard E. Johnson, Inc. was a non-marital asset not subject to marital distribution.
¶ 26. Paula asserts that there was no evidence submitted to support the chancellor's determination that Richard E. Johnson, Inc. ("REJ") stock was non-marital property. We agree. Indeed, the evidence supported the opposite conclusion.
¶ 27. The determination of whether REJ stock was a marital versus non-marital asset was clearly answered through two items of documentary evidence introduced by Richard. Neither party presented much evidence to contest this issue. Paula contended that she was entitled to half of the assets. Richard testified that she should not receive half. Richard, however, introduced two exhibits that support only one conclusion-that the accumulation of value in REJ, during the parties' marriage, was to be considered marital property, subject to equitable division.
¶ 28. First, Richard introduced the parties' joint Statement of Financial Condition (the "Statement"). The Statement was prepared by Richard's long time certified public accountant, and it was simply an unaudited compilation of financial statements. The Statement included the parties' balance sheet, which itemized their assets, liabilities and net worth with corresponding explanatory notes.
¶ 29. The joint balance sheet, dated May 31, 2001, indicated that Richard's and Paula's total assets equaled $3,234,131. It also revealed that Richard's "Net Worth  Pre-Marital Assets"[1] equaled $358,100.[2] The next line on the balance sheet admitted that Richard's and Paula's "Net Worth  Marital Assets" equaled $1,510,124. Their joint "Total Net Worth" equaled $1,868,224.
*493 ¶ 30. The "accumulated" value of REJ stock, i.e., the appreciation or increase in value of REJ stock from the beginning of the marriage until their separation, was included in the amount of their "Net Worth  Marital Assets." This established Paula's argument that the accumulation, appreciation or increase in value of the REJ stock, during the term of the marriage, was in fact a marital asset.
¶ 31. In preparing the joint financial statements, the accountant relied upon the court ordered appraisal values of the businesses, which were obtained from James A. Koerber. Koerber appraised the value of stock in Southeastern Lumber, Inc., Southeastern Kilns, Inc., and REJ.
¶ 32. As of November 25, 1989,[3] Koerber appraised the fair market value of Richard's equity interest in REJ at $287,100. As of May 31, 2001,[4] Koerber also appraised the fair market value of Richard's equity interest in REJ at $872,100. The value of the REJ stock accumulated or increased during the marriage by approximately $585,000.
¶ 33. Second, Richard prepared and introduced a document entitled "Summary of Marital Assets Pursuant to MRE1006 by Richard Johnson" (the "Summary"). The Summary described the parties' marital property as follows:

 Joint Net Worth $ 1,868,224.00
 Richard Johnson's pre-marital assets $ 358,100.00
 Joint assets accumulated during marriage $ 1,510,124.00

(emphasis added). The final line of the Summary indicated the amount Richard believed to be "Assets available for equitable distribution." Again, this amount included the accumulated or increase in value of REJ stock.
¶ 34. In A & L, Inc. v. Grantham, 747 So.2d 832, 838-39 (¶¶ 16-25) (Miss.1999), the Mississippi Supreme Court addressed the appropriate consideration of the equitable division of stock of a closely held corporation, when the value of the stock increases during the term of the marriage. The court determined that an increase in the value of the corporation due to the husband's managerial efforts, during the marriage, would allow the increase in value of the stock to be considered a marital asset. Id. at 839(¶ 24).
¶ 35. Because we find that the Statement and the Summary are compelling evidence that clearly establish that the accumulated value of the REJ stock was a marital asset, we hold that the increase in value of the REJ stock was a marital asset subject to equitable division under Hemsley. Accordingly, we are of the opinion that the chancellor was manifestly wrong and clearly erroneous when she determined that the accumulation or increase in value of REJ stock, from the date of the marriage through the date of the divorce, was not property accumulated during the marriage. We reverse and remand this case to the chancellor for an equitable division of the fair market value of the REJ stock.
*494 ¶ 36. We conclude our consideration of this issue with a further discussion on the evidentiary value of the financial statements that were presented. The financial statements were admitted into evidence subject to cross-examination about several unsupported adjustments and projections that were calculated by Richard or his accountant. The chancellor apparently incorrectly relied upon the accuracy of the numbers included in the compiled financial statements. Upon remand, we direct the chancellor to reconsider the financial statements to determine the true net worth of the parties.
¶ 37. For example, in the Statement, the parties' "Net Worth  Marital Assets" was reduced by $601,183 for an unaccrued liability for "Estimated Income Taxes."[5] According to the balance sheet, this amount was based on the "differences between current values of assets and the estimated current amounts of liabilities and their bases." The corresponding note indicated that the "provision will probably differ from the amounts of income taxes that eventually might be paid because those amounts are determined by the timing and method of disposal or realization and the tax laws and regulations in effect at the time of disposal or realization." (emphasis added). The amount does not take into consideration any reductions that may be allowed under the Internal Revenue Code based on the timing of the disposal of such assets. The chancellor should not have relied upon this unaccrued liability for estimated income taxes because it improperly understated the true, actual "Net Worth  Marital Assets" of the parties.
¶ 38. Further, in the cover letter of the financial statements, the certified public accountant states that these statements were simply "compiled," and he specifically expressed no professional opinion as to the accuracy of the numbers that were included. The "Accountant's Compilation Report" reveals that "I [the CPA] did become aware of certain departures from generally accepted accounting principles...." Accordingly, the balance sheet may only establish that the chancellor failed to properly consider substantial "marital" assets in the equitable division of property.
¶ 39. Also, the chancellor should ensure that other assets, such as the assets entitled "Equipment-Rental," are accurately valued for a proper consideration in the equitable distribution. The balance sheet included over $400,000 of personal assets purchased by Richard Johnson that were leased to REJ. The chancellor did not equitably divide these assets. These assets were personal assets and leased to the corporation to obtain a maximum net income or return to the majority shareholder, providing rental income on a regular basis. The Statement and the appraisal do not indicate when the various assets were purchased or the additional compensation/benefit that Richard received. Certainly, if any of these assets were purchased during the marriage, such assets should be considered marital assets, pursuant to Hemsley, because they were acquired during the marriage. Thus, the assets under the heading "Equipment-Rental" are subject to equitable division.
¶ 40. On remand, the chancellor must obtain further testimony or evidence to *495 ensure that the adjustments and projections that were used to reduce the parties' net worth was not simply a transparent accounting maneuver to undervalue or improperly reduce the bottom line of the parties' net worth. Likewise, the chancellor should undertake further review of the assets included in the balance sheet, such as "Equipment-Rental" to determine whether any of such assets were acquired or accumulated in value during the marriage; in which case, such assets should be considered as marital property.

B. Whether the trial court awarded an inadequate amount of periodic alimony.
¶ 41. We also find that the chancellor committed error in the award of $750 per month in permanent periodic alimony.
¶ 42. The supreme court has outlined the procedure to determine the appropriate division of marital property and award of alimony. After the equitable division of property, the third step in this analysis is that if the marital assets, after equitable division and in light of the parties' non-marital assets, will adequately provide for both parties, then no more need be done. If an equitable division of marital property, considered with each party's non-marital assets, leaves a deficit for one party, then alimony should be considered. Kilpatrick v. Kilpatrick, 732 So.2d 876 (¶ 16) (Miss.1999). Here, we agree with the chancellor that alimony was appropriate. We reverse and remand as to the amount awarded.
¶ 43. The amount of periodic alimony is largely left to the sound discretion of the chancellor. In Gray v. Gray, 562 So.2d 79, 83 (Miss.1990), the Mississippi Supreme Court held that:
Alimony, if allowed, should be reasonable in amount commensurate with the wife's accustomed standard of living minus her own resources, and considering the ability of the husband to pay.
(emphasis added).
¶ 44. The factors for considering periodic alimony were established in Armstrong v. Armstrong, 618 So.2d 1278, 1280-81 (Miss.1993). The factors were identified and discussed by the chancellor. The chancellor concluded that only one Armstrong factor weighed against Paula. However, as part of the discussion of that factor, the chancellor indicated that Paula had done nothing wrong. The chancellor then granted an award of permanent periodic alimony and set the amount with the following language:
Certainly Paula cannot expect to have the same standard of living post-divorce absent some support from her husband. Considering the fact that she will have her own separate substantial estate after the divorce, her wage earning capacity, and the other factors discussed supra, the court finds it reasonable to award to Paula the sum of $750 per month as permanent periodic alimony....
She is capable of earning a modest living, but will require some assistance from her husband to maintain a semblance of the standard of living she enjoyed during the marriage.

1. The chancellor applied the incorrect legal standard.
¶ 45. The chancellor's standard of "semblance of the standard of living she enjoyed during the marriage" is legally incorrect. Our legal standard for the award of permanent periodic alimony is not to maintain a "semblance" of the standard of living enjoyed during the marriage. The supreme court has recognized on numerous occasions that the general rule under which the amount of alimony is to be calculated provides that the recipient *496 should be entitled to a reasonable allowance that is commensurate with the standard of living to which they had become accustomed measured against the ability to pay on the part of the party subjected to the payment order. See Gray, 562 So.2d at 83; Rainer v. Rainer, 393 So.2d 475 (Miss.1981); Jenkins v. Jenkins, 278 So.2d 446 (Miss.1973); Shows v. Shows, 241 Miss. 716, 133 So.2d 294 (1961). Because we believe that the chancellor applied an incorrect legal standard and remand on that basis, we do not consider whether the award was adequate. Such analysis can be performed only after the proper legal standard is applied.

2. The chancellor erred in the consideration of the Armstrong factors.
¶ 46. Because we remand for consideration of an appropriate amount of alimony, we provide a detailed, although not exhaustive, review of the chancellor's consideration of the Armstrong factors.
¶ 47. The income and expenses of the parties. The chancellor found that Paula was unemployed and received temporary alimony of $3,000 per month, child support of $1,070 per month and Richard paid many of Paula's other expenses. Based on the temporary support order, Paula received more than $4,000 per month in support from Richard. Richard earned over $12,000 per month.
¶ 48. The chancellor chose to examine Paula's expenses much more closely than Richard's expenses. The chancellor considered some of Paula's expenses to be extravagant; yet, she apparently failed to likewise examine Richard's extravagant expenditures. Although the chancellor makes no finding or conclusion, this factor certainly favors alimony to Paula.
¶ 49. The health and earning capacities of the parties. The chancellor found Richard to be in good health, and Paula to be in "apparent good health" but noted several health problems. There was evidence that Paula had been diagnosed with pre-cancerous cervical cells and was scheduled to have a medical procedure performed shortly after the trial. Further evidence indicated that Paula may have to have a hysterectomy and that Paula suffers "nerve" problems, for which she intends to seek psychiatric help.
¶ 50. The chancellor found Richard's earning capacity to be unchanged and found Paula to be unemployed. The chancellor detailed Paula's work history and held that "[i]t is reasonable to expect that Paula could obtain employment and have annual earnings of $25,000 or more, plus interest income from investments." However, there was no evidence in the record to substantiate this finding by the chancellor. The dissent suggests that the chancellor is in a better position to estimate her earnings. Since the chancellor was specially appointed and does not regularly hear cases in Wayne County, we are of the opinion that such conclusion by the chancellor was not supported. This factor favors an award of alimony to Paula.
¶ 51. The needs of each party. Paula itemized her expenses at over $5,000. Richard itemized his expenses at over $10,000. Richard's itemization included the temporary alimony payment that he had been ordered to pay, which the chancellor's final judgment substantially reduced, and approximately $2,500 for payments on the condominiums that the chancellor ordered sold or otherwise disposed of. Therefore, Richard's expenses are much less than the itemized $10,000. This factor favors alimony to Paula.
¶ 52. The obligations and assets of each party. In the supplemental consent for divorce, Richard agreed to purchase Paula's interest in the marital home and incurred *497 a note payable of $250,000. The chancellor determined that:
Paula will have assets at her disposal. Richard likewise has substantial assets. Richard's assets are greater largely due to the fact that he was in business prior to the marriage. It is likely that his financial situation will improve throughout his life. Paula does not have the ability to earn as high an income as does Richard, but she is capable and will probably do well in the future with her divorce distribution and her wage earning capacity.
¶ 53. The chancellor's conclusion on this issue is misplaced. The chancellor considered the $250,000 payment for the residence to be a substantial investment portfolio that will provide income earning potential for Paula. However, since she lost the use of the residence, Paula will have to expend most if not all of such funds to purchase another residence for her and the children. This factor favors alimony to Paula.
¶ 54. The length of the marriage. The parties were married for more than twelve years. This factor favors alimony to Paula.
¶ 55. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care. Paula received physical custody of the children. The chancellor determined that the children, ages thirteen and eleven, would not require day care. The chancellor, however, disregarded the fact that the children will continue to require attention and supervision by Paula, yet failed to provide sufficient resources. This factor favors Paula.
¶ 56. The age of the parties. At the time of the divorce, Paula was thirty-five, and Richard was forty-two. This factor favors Paula.
¶ 57. The standard of living of the parties, both during the marriage and at the time of the support determination. At the time of their separation, the parties lived in what the chancellor described as an "expensive" home, costing approximately $700,000 to build, in Wayne County, Mississippi. However, with two beach condominiums and a sky box in the New Orleans Superdome, the chancellor determined that their lifestyle was "not extravagant." The chancellor's finding on this issue was clearly contrary to the evidence presented. This factor favors a substantial award of alimony to Paula.
¶ 58. The tax consequences of the spousal support order. The chancellor ordered that Richard would get to deduct his alimony payment, thereby obligating Paula to incur a tax liability for the alimony she received. Requiring Paula to pay federal and state income tax on the alimony she received simply further reduced the disposable amount of the alimony available to Paula. This factor favors Paula.
¶ 59. Fault or misconduct. The chancellor found Richard to be guilty of adultery and "thus at fault in the destruction of the marriage." The chancellor's analysis did not, however, end there. The chancellor included a discussion as to why Paula and Richard were married to begin with. The chancellor continued with a conclusion that there was never much love in the marriage and that the marriage was one of convenience.
¶ 60. Richard's unfaithfulness was the cause of the dissolution of the marriage. Yet, the chancellor appears to excuse Richard's actions and place blame on Paula for the marriage. The basis of the origin of a marriage should not be considered as fault or misconduct for the divorce. The reason they wed and an assessment of the depth of their love during *498 their marriage was simply not relevant. Indeed, consideration of fault or misconduct focuses on the dissolution of the marriage.
¶ 61. No evidence of Paula's fault or misconduct was presented. Certainly, their reasons for marriage should not be considered misconduct. This factor favors Paula.
¶ 62. Wasteful dissipation of assets by either party. The chancellor found "this factor weighs against Paula, as illustrated by her building a $700,000 house in Wayne County and by paying rather more than she should have for one of the condominiums." However, the chancellor found that Richard delegated these responsibilities to Paula and concluded that her wastefulness did not "hurt the marital estate to any great degree" because one of the condominiums actually increased in value. The chancellor's finding was contradictory in nature; therefore, this factor should not weigh against Paula.
¶ 63. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support. The chancellor made no finding on this factor.
¶ 64. An overall review of the Armstrong factors indicates that Richard earned more than $12,000 a month. He was also granted sole and complete ownership of all the businesses, which produced the income the parties used during their marriage, and was granted exclusive use of the former marital home. Additionally, Richard was granted ownership of the Walker Keys condominium, a 1991 Camaro automobile, an $8,500 boat, two motorcycles, and a 1997 Ford Expedition. He also received half of the money in his retirement accounts.
¶ 65. In contrast, Paula is now unemployed. She listed her expenses as $4,000 per month for herself and $1,070 for the two children. Paula was awarded $750 a month in alimony and $1200 a month in child support. She also received $250,000 as payment for her half of the marital home, half of the value of the retirement accounts, her jewelry, several recreational vehicles, and a 1999 Lincoln Navigator. From this, the chancellor expected Paula to purchase a new home for herself and the children, make investments in order to supplement her cash flow, and pay her attorney's fees.
¶ 66. No testimony was presented at trial to support the chancellor's conclusion that Paula could have annual earnings of $25,000 or more. The only testimony as to Paula's earnings was her prior part-time employment with a local attorney, where her projected, not actual, income was approximately $13,000 per year, less than one-half of the amount determined by the chancellor.
¶ 67. The dissent agrees with the chancellor and concludes that "[e]xpecting Richard to continue to support her at a level where she has to work part-time is unreasonable. The chancellor is in the better position to decide reasonable future salary. The chancellor is more familiar with the local job market and routinely decides persons' earning potential." Both the chancellor and the dissent apply the incorrect legal standard. Paula's post-divorce standard of living will be significantly less than it was pre-divorce, i.e., prior to Richard's marital misconduct.
¶ 68. Here, a significant deficit existed for Paula. The chancellor clearly failed to adequately compensate for this deficit. Paula's alimony award was not commensurate with the standard of living she had become accustomed to during the marriage. Therefore, on remand, we instruct the chancellor to consider the Armstrong factors and determine the proper *499 amount of periodic alimony to be awarded Paula.

C. Whether the trial court erred in failing to award lump sum alimony, or in the alternative, failed to equitably divide the assets of the parties.
¶ 69. Next, we find that the chancellor committed error in the failure to award Paula lump sum alimony.
¶ 70. The factors for the chancellor to consider in deciding whether to award lump sum alimony were announced in Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). We provide a detailed, although not exhaustive, review of the chancellor's consideration of the Cheatham factors.
¶ 71. Substantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse's business. Certainly, the parties' income and wealth came from Richard's earnings during their marriage. His net worth increased from approximately $300,000 to over $1,800,000. Richard is an entrepreneur, who has earned and lost hundreds of thousands, if not millions, of dollars during the marriage. In the year or so before the separation, Richard borrowed money using the marital residence as collateral and made a net profit of approximately $1,400,000. The record indicates that this profit was used by Richard to pay off and reduce his debts.
¶ 72. The chancellor found that Paula's contribution to the marriage was negligible. She quit her job to be a wife and mother of the children. She worked off and on during the marriage. Most importantly, however, it appears that the parties have reared two well behaved children, and their parents are very proud of them.
¶ 73. Richard spent most of his time and resources at work. Paula maintained the home and took care of the children. Paula's efforts at child rearing must be considered a significant contribution. The contribution of the spouse, with primary child rearing responsibility, is not to be considered insignificant or negligible. The holding by the chancellor wholly disregards Paula's domestic contribution.
¶ 74. A long marriage. A marriage of twelve years certainly favors an award of lump sum alimony.
¶ 75. Where recipient spouse has no separate income or the separate estate is meager by comparison. At the time of the divorce, Paula had no separate income. She had no immediate expectation of employment. She was dependent upon Richard for support for her and the children. Prior to the chancellor's judgment, Paula received temporary alimony and child support of $3,000. She claimed expenses of $4,000 per month for herself and of $1,070 for the children. The assets she received from the judgment were meager by comparison to Richard's assets.
¶ 76. Without the lump sum award the receiving spouse would lack any financial security. Paula had no financial security without Richard. He was the primary source of the couple's income and support.
¶ 77. In Cheatham, the court concluded that "[a] closer analysis of these cases, however, reveal that the single most important factor undoubtedly is the disparity of the separate estates." Id. Here, there was a significant disparity in the division of the marital assets that favors a significant award of lump sum alimony.
¶ 78. In Sanderson v. Sanderson, 824 So.2d 623, 625(¶ 2) (Miss.2002), Conchetta and Robert Sanderson were married for twenty-two years. At the time of the divorce, Robert had substantial income from *500 holdings of stock in Sanderson Farms, Inc., valued at $4,000,000. Id. The chancellor determined that Robert's holdings were not marital assets, subject to equitable division, and did not award Conchetta any portion of the accumulated shares of the corporation. Id. at 625(¶ 7). Conchetta was awarded lump sum alimony in the amount of $200,000 and rehabilitative alimony in the amount of $1,500 per month for thirty-six months. Id.
¶ 79. This Court reversed finding that Conchetta had been denied the anticipated cushion of Robert's extensive holdings in Sanderson Farms' stock as a source of financial security during her retirement years. Id. at 627(¶ 11). We also found that even if Conchetta returned to work as a teacher, her income would be substantially less than that enjoyed by Mr. Sanderson. Id. Thus, we held that it would not be equitable, upon the dissolution of a marriage that exceeded twenty years in length, during which she forsook a professional career in favor of working in the home, to leave Robert with a multi-million dollar stock portfolio, and an annual income anticipated to be routinely in excess of $100,000. Id. This would leave Conchetta without any meaningful support beyond her own labor once the relatively brief period of rehabilitative alimony was exhausted. Id. On writ of certiorari, the supreme court affirmed and held that the rehabilitative and lump sum alimony award was insufficient in light of the parties' prospects for future earnings and retirement. Id. at 627(¶ 13).
¶ 80. In Flechas v. Flechas, 791 So.2d 295, 298(¶ 4) (Miss.Ct.App.2001), Mike and Eunice Flechas were married for six years. Prior to the marriage, Eunice had been a teacher in Georgia earning $33,000 per year and upon the marriage, she resigned from her job, sold her home and moved to Mississippi. Id. Eunice did not work outside the home once she was married, nor did she renew her teaching certificate in Georgia or become certified to teach in Mississippi. Id. As a homemaker, Eunice refurbished Mike's home, kept house, cooked meals and helped care for Mike's children. She paid the monthly bills and purchased necessities such as food and clothing for all the members of the household on a budget of $2000 a month. Id.
¶ 81. Eunice's net worth at the time of the divorce was approximately $500,000 which included proceeds from the sale of her Georgia home and an inheritance from her mother. Id. Mike was the sole owner of M.M. Flechas Shipyard Company, and also had interests in several other businesses amassing a substantial net worth of about $6.4 million at the time of the divorce. Id. at 298(¶ 5). At some point prior to the divorce, the couple made an agreement to keep their pre-marital estates separate and distinct. Id. at 302(¶ 22). Relying on this, the chancellor found that even though Eunice had made this indirect contribution, the oral agreement prevented her from sharing in any way in accumulated assets. Id. at 300(¶ 10). The chancellor awarded Eunice lump sum alimony in the amount of $36,000. Id.
¶ 82. On appeal, this Court reversed and found the agreement was invalid. Id. at 302(¶ 16). This Court held that the salary Mike paid himself during the six year marriage certainly was acquired during the course of the marriage and thus, is a marital asset subject to equitable distribution. Id. at 305(¶ 37). Moreover, on the issue of lump sum alimony, this Court held that the chancellor failed to take into consideration what Eunice gave up in abiding by Mike's wishes not to work at a full-time job outside the home, and the chancellor arbitrarily set an amount without considering the separate estates of the parties. Id.
*501 ¶ 83. In this appeal, each of the Cheatham factors favors an award of lump sum alimony. Accordingly, we reverse and remand for consideration of an appropriate award of lump sum alimony.

D. The court erred by failing to award Paula Johnson an attorney's fee and thus forcing her to dissipate the funds awarded to her in order to pay her attorney.
¶ 84. Because we reverse and remand this case for further proceedings, we decline to consider this assignment of error. On remand, the chancellor may again consider the award of attorney's fees and costs to ensure fairness and equity.

IV. Conclusion
¶ 85. By remanding this case for further consideration, the chancellor has all of the tools of marital dissolution available: equitable division, lump sum alimony and/or periodic alimony. Our opinion does not favor one over the other. Indeed, the chancellor may correct the errors by granting an appropriate equitable division of assets, an appropriate award of lump sum alimony, or an appropriate award of periodic alimony, or an appropriate combination.
¶ 86. In King v. King, 760 So.2d 830, 835-36(¶ 18) (Miss.Ct.App.2000), we detailed the proper procedure:
First, the chancellor is to classify the parties' assets as marital or non-marital based on the court's decision in Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994). Second, the chancellor is to value and equitably divide the marital property employing the Ferguson factors as guidelines, in light of each party's nonmarital property. However, "[p]roperty division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division." Ferguson, 639 So.2d at 929. Third, if the marital assets, after equitable division and in light of the parties' non-marital assets, will adequately provide for both parties, then "no more need be done." Finally, if an equitable division of marital property, considered with each party's non-marital assets, leaves a deficit for one party, then alimony should be considered. Kilpatrick v. Kilpatrick, 732 So.2d 876 (¶¶ 16) (Miss.1999).
On remand, this procedure should be followed.
¶ 87. For these reasons, we reverse and remand this case for further consideration by the chancellor on all issues.
¶ 88. THE JUDGMENT OF THE CHANCERY COURT OF WAYNE COUNTY IS REVERSED AND REMANDED. COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, IRVING, AND CHANDLER, JJ., CONCUR. BRIDGES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. MYERS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY LEE, J.
BRIDGES, J., concurring in part, dissenting in part:
¶ 89. While I am in agreement to remand this case, I disagree with the majority opinion in its decision to reverse and remand for the chancellor to rehear all matters, particularly those involving the division of marital property pursuant to Ferguson,[6] the award of alimony in line *502 with the Cheatham[7] factors, and attorney's fees in accordance with the McKee[8] factors. Therefore, I dissent.
¶ 90. It has always been a position of this Court to affirm the chancellor in such cases unless he or she was manifestly wrong, clearly erroneous or an erroneous legal standard was applied, as has already been set forth in the majority opinion. Flechas v. Flechas, 791 So.2d 295, 299(¶ 7) (Miss.Ct.App.2001); see also McLaurin v. McLaurin, 853 So.2d 1279, 1283(¶ 10) (Miss.Ct.App.2003); Scally v. Scally, 802 So.2d 128, 131 (¶¶ 23-24) (Miss.Ct.App.2001).
¶ 91. It is not for this Court to be the finder of fact or to determine whether the chancellor made a division of marital property, awarded alimony or the proper award of alimony, and attorney's fees as we may have done. Rather, it is for this Court to make a determination from appropriate findings of fact whether the chancellor made the proper award of such in accordance with the testimony and evidence before her.
¶ 92. I would, therefore, remand this matter for findings of fact only in accordance with Cheatham as it applies to alimony, Hemsley and Ferguson as it applies to marital property and McKee as it applies to attorney's fees, if such can be done, and report such findings to the Court to assist us in making our decision on whether to affirm or whether to reverse and remand for further proceedings in the trial court.
¶ 93. As to all other matters, I would affirm the chancellor. Accordingly, I concur in part and dissent in part.
MYERS, J., concurring in part, dissenting in part:
¶ 94. While I concur with the majority as to issues A, C, and D, I believe the chancellor awarded an adequate amount of periodic alimony. As a result, I respectfully dissent from issue B of the majority's decision.
¶ 95. A chancellor's award of periodic alimony will not be disturbed on appeal unless it is so grossly inadequate as to form an abuse of discretion. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). In determining the proper amount of periodic alimony, the chancellor must consider the Armstrong factors. Id.
¶ 96. It is apparent from looking at the chancellor's opinion that she did consider the Armstrong factors. The chancellor awarded Paula permanent alimony in the amount of $750 a month. No one expects Paula to subsist on this amount alone. She is able-bodied and a high school graduate. She should have little problems in obtaining full-time employment. While Paula claims to have problems with her "nerves," the chancellor stated that no problems were observable during the trial. More importantly, no medical evidence of any impairment was entered.
¶ 97. Paula contends that the chancellor's finding that she can make at least $25,000 per year is unsupported and unreasonable. She backs up this claim by finding the income of her last job would have only amounted to $13,520 if she had worked an entire year at that employer. What Paula fails to consider is that she had only worked part-time during the marriage. Richard provided most of the family's *503 financial support and there was no need for Paula to work. Expecting Richard to continue to support her at a level where she only has to work part-time is unreasonable. The chancellor is in the better position to decide reasonable future salary. The chancellor is more familiar with the local job market and routinely decides persons' earning potential.
¶ 98. Further, I would like to note that while equitable division of marital property and alimony are distinct concepts, they must be considered together when judging the fairness of any award. Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). In light of the value of property Paula received,[9] the $750 per month is fair. I believe that this amount is not grossly inadequate enough as to form an abuse of discretion on the chancellor's part. Accordingly, I concur in part and dissent in part.
LEE, J., JOINS THIS SEPARATE OPINION.
NOTES
[1] Because this exhibit was prepared and offered by Richard, we may conclude that the language used was selected by Richard, his accountant or his attorney.
[2] This entry referred the reader to an explanatory note that listed only two "premarital assets." One of the assets was the REJ stock. The note identified the appraised value of the REJ stock ($287,100) as of the date of the parties' marriage. The other asset is not relevant to our discussion.
[3] The parties were actually married on November 25, 1988. However, through a mistake, the appraisals were prepared as of November 25, 1989. The parties accepted the later date as the appropriate date for valuing pre-marital assets.
[4] The parties agreed that the chancellor's decision would be based on valuations and financial statements as of May 31, 2001.
[5] There was no testimony that this was an accurate amount of the accrued or expected tax liability. The accountant testified that an equitable distribution of marital property would not cause an immediate tax liability, and thus, the "tax decreased value" was not the appropriate tax liability value for these businesses in this case. The reduction of the book value of these assets was improper.
[6] Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994).
[7] Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988).
[8] McKee v. McKee, 418 So.2d 764, 767 (Miss.1982); see also Jones v. Starr, 586 So.2d 788, 792 (Miss.1991); Johnson v. Johnson, 650 So.2d 1281, 1288-89 (Miss.1994) and their progeny.
[9] For example, up to $32,000 for the sale of a condominium, half of the couple's IRA accounts, and $250,000 for the couple's Wayne County residence.