IRVING, J.,
dissenting:
¶ 30. The majority concludes that the chancellor improperly applied the presumption of undue influence because Patricia McDaniel Langston and Mansfield Langston were a married couple. The majority then decides that the proper remedy is to reverse and render, rather than remand for a consideration of the facts utilizing the proper standard. Based on my review of the record, I find that the chancellor utilized the proper standard, but even if she did not, the proper remedy is not to reverse and render. Therefore, I dissent.
*664 ¶ 31. The record reflects that the chancellor’s findings of fact and conclusions of law make up sixteen pages. In her extensive findings of fact and conclusions of law, the chancellor made specific findings regarding Mansfield’s domination of Patricia. In her judgment, the chancellor noted:
The evidence showed that Mansfield engaged in a pattern of systematically alienating Patricia from her family and friends. April Frierson testified that Patricia would not come inside of her home because Mansfield had accused Patricia of having an affair with April’s husband. Prior to the marriage of Patricia to Mansfield, Linda Myles-Williams testified that she and Patricia were long[-]time friends, who talked frequently by phone and visited often in each othei*[’]s home. After her marriage to Mansfield, the calls and visitation virtually ceased. Historically, Patricia talked to her mother and sister about her business and personal affairs. Ethel Williams testified she was not aware that Patricia executed the warranty deed and CD in question. Only Mansfield and those who were connected with him were aware of these inter vivos transactions.
¶ 32. The chancellor made specific findings of fact which support her decision that the two inter vivos transactions by Patricia were a nullity because Mansfield exercised undue influence over Patricia in the procurement and execution of the warranty deed and the certificate of deposit. For the reasons stated, I would affirm the chancellor’s judgment.
¶ 33. However, even if I agreed with the majority’s conclusion that the chancellor applied an incorrect legal standard, I would still find that this case should be reversed and remanded, rather than reversed and rendered. Mississippi appellate courts generally reverse and remand a chancellor’s judgment when an incorrect legal standard has been applied. See In Interest of R.D. v. Linda D., 658 So.2d 1378, 1389 (Miss.1995); Schonewitz v. Pack, 913 So.2d 416, 418 (¶ 6) (Miss.Ct.App.2005); In re Guardianship of Brown v. Wiley, 902 So.2d 604, 606 (¶ 2) (Miss.Ct.App.2004); Johnson v. Johnson, 877 So.2d 485, 495-96 (¶ 45) (Miss.Ct.App.2003). Therefore, if I agreed with the majority’s finding that the chancellor applied an incorrect legal standard, I would reverse and remand this case to the chancellor with instructions to apply the proper legal standard, because I believe that, when applying the standard that the majority believes should be applied, the facts of this case would still compel the result that was reached by the chancellor.
KING, C.J., AND LEE AND MYERS, P.JJ., JOIN THIS OPINION.